INHABITANTS OF TOPSHAM *vs.* INHABITANTS OF LISBON.

Sagadahoc, 1875.—May 3, 1876.

*Amendment. Way. Exceptions. Damages.*

It is within the discretionary power of the judge, and not subject to exception, to allow an amendment, legally allowable at any previous stage of the case, after issue joined and after the testimony has been put in, and when the case is about to go to the jury.

In an action by one town against another for injury to a bridge by turning the current of the stream, the defendants cannot question the validity of

the location of the way in the plaintiff town if the records show that the county commissioners had jurisdiction in the case and made an actual location which has never been quashed.

When the jury in such suit are instructed that "it is incumbent upon the plaintiffs to prove that the sole, true and efficient cause of the damage was the want of ordinary care on the part of the defendants, and that if the want of ordinary care on the part of the plaintiffs contributed to it in any degree, or if it were caused in part by a freshet which men of ordinary prudence could not reasonably be expected to anticipate or provide for, the plaintiffs cannot recover," there is nothing in such instructions to which the defendants can sustain exceptions, though the jury are at the same time cautioned not to enter into any nice logical discussion as to the meaning and effect of the word sole in that connection, but to apply their common sense and ascertain the real, true, efficient cause of the mischief; and though the instructions are not specially given in the form requested by the defendants' counsel.

When the plaintiffs have lost a new and suitably constructed bridge by the fault of the defendants, and have rebuilt the same, the measure of the damages which they are entitled to recover is not necessarily the amount which they have expended and interest, but so much thereof as under all the circumstances it was necessary and suitable they should expend to make the way safe and convenient for travelers; and it is not necessarily limited to the cost of the original structure.

The rule is compensation for the expense necessarily incurred by reason of the defendants' fault.

ON EXCEPTIONS, and motion to set aside the verdict as against evidence, its weight, and because the damages ($850) were excessive.

CASE, founded on the negligence of the defendants in so making a county road ordered by the county commissioners, and changing the current of the stream that it washed out the abutment made by the plaintiffs on their side of the same county road.

An island lay in the stream on the line of the road between the two towns, and the negligence charged was that the defendants in building their end of it made a dump from the island to the western shore instead of a bridge and thus caused all, instead of a part only, of the stream to pour through the eastern channel. The eastern abutment and the bridge from the island to the eastern shore was carried away by the freshet of October 12, 1871. This action was brought to recover damages therefor.

The plea was not guilty with a brief statement setting out the location of a highway in Topsham and Lisbon over the *locus* and justifying under it.

The case was opened to the jury by the plaintiffs' counsel as one based on the defendants' negligence, and evidence received was not specifically objected to on the ground of the omission to allege such negligence in the writ, the point being first taken in the defendants' requests for instruction after the evidence was all out; and after the arguments had been finished, and just as the judge was about to charge the jury, the plaintiffs' attorney asked leave to amend each of the three counts in the writ by inserting the words negligently and unlawfully, twice in each count. To this the defendants objected, both in substance and because it was too late in the progress of the case. But the presiding justice allowed the amendments subject to the objection, and they were made, and he then charged the jury. To the allowance of these amendments the defendants excepted. The defendants also excepted to the admission of evidence objected to by them and admitted, and to the rejection of evidence offered by them, and ruled out in the several instances mentioned in the stenographer's report of the evidence which was made a part of the exceptions. The defendants requested the court to instruct the jury as follows, besides other requests which were satisfactorily given.

I. That the copy of the location of the road in Topsham is insufficient to authorize or require the town to make the road or abutment, or bridge at the Little River, complained of in their writ, and that for that reason they cannot recover.

II. That if they find that the defendants and their officers did exercise ordinary care in constructing the road, dump and bridge, as they did, the plaintiffs though damaged, cannot recover in this action.

III. That the defendants had a right to divert the water of the stream into one channel in making the road, if in the opinion of the jury it was prudent, and the exercise of ordinary care to make it in that manner.

IV. That the defendants were not bound to provide against unusual and extraordinary freshets, or such as they could not reasonably expect at the time they made the road, would occur.

V. That if they find that the efficient cause of the damage set forth in the writ, was an unusual and extraordinary freshet, and

that the washout would not have occurred without it, the plaintiffs cannot recover.

VI. That if they find that the abutment on the Topsham side of the stream was unsuitable for such a place and such a stream, or was not constructed with ordinary care and skill, and that this contributed in the least degree to the damage complained of, the plaintiffs cannot recover.

VII. That the negligence of the defendants in the construction of the road or dump or bridge, must be the sole cause of the damage complained of by the plaintiffs, or they cannot recover.

VIII. That the plaintiffs could maintain an action against the defendants on the facts in this case, only on the ground of their negligence or want of ordinary care in the manner of constructing the road, dump and bridge; that the burden of proof is upon the plaintiffs to show that negligence; that since there is no allegation of negligence in the plaintiff's writ, the declaration is fatally defective. The action is misconceived and cannot be maintained.

These requests were not otherwise given than as appears in the charge which follows: because they were not specially given, the defendants excepted.

The presiding justice charged the jury *inter alia* as follows:

"The town of Topsham in this case, claim that they have suffered by reason of the unlawful diversion of the waters of Little River stream by the defendants in the construction of the work which the defendants had to perform there, and that they have suffered by reason of the negligent acts of the defendants in the construction of that work.

The burden of proof rests upon the plaintiffs to establish their right to recover against the defendants by proof of those acts.

Now we are to look at the testimony in the case, and see what the positions of the parties were when entering upon the construction of that way, and what the duties and obligations of each were; and here I dispose of one or two questions which are presented with a view of preserving the rights of the parties in a possible contingency, and I am asked to rule, that the location of the road on the Topsham side, is insufficient to authorize or require that town to make the road and abutments at Little River, and for

that reason they cannot recover. It proceeds upon the idea that the commissioners of Sagadahoc, according to the record presented, had no jurisdiction to lay out that way; and in brief I say to you that the mis-recital of the name of the county in which the original petition was presented, reciting Cumberland instead of Androscoggin, or anything else in the record of the proceedings, would not deprive the commissioners of Sagadahoc of their jurisdiction to lay out the way, and that as the records show they did lay out the way, and required the town of Topsham to build it, that record would stand until it was quashed by the proper proceedings against the record itself, and the town would be bound by law to construct the bridge and abutments, and that nothing in the record, no failure there would prevent them from recovering, if they are otherwise entitled to recover. I give you the instruction that the copy of the location of the road in Lisbon, is sufficient in law to make it a legal location, such as would require the defendants forthwith to make the same. . . . .

The plaintiffs proceed upon the ground that the defendants did their part of the work in such a negligent manner, and with such a want of ordinary care in the construction of the work as resulted in injury to them. That the damage by the carrying away of their abutment in the fall of 1871, was caused by that careless, unnecessary and unlawful diversion of the stream, so as to wash against the eastern bank, and destroy their portion of the work.

It is incumbent upon and necessary for the plaintiffs, in order to entitle them to recover, taking the burden on themselves, to establish to your satisfaction that there was a want of ordinary care on the part of the defendants.

That is the measure of their duty in the construction of their work.

The construction of any bridge is liable to effect some obstruction or diversion of the currents of a stream.

When it is required by lawful authority that it should be constructed, it is incumbent upon the party upon whom that duty devolves, to use ordinary care not to do injury by means of it, not to construct it in such a way as to do unnecessary evil to others. If they do that, and if injury follows when they have used such ordi-

nary care in the construction of the work, they are not responsible for the injury.

Now, gentlemen, you perceive that right here there comes a matter which is all important in the decision of this cause, because on both sides of the case a question arises whether the parties acted with ordinary care; and perhaps the most important part of my duty in committing this case to you, is to give you such a definition of ordinary care as shall enable you to apply the evidence to the issue here, and to decide the questions of fact arising in the case correctly.

There are three main questions arising in this case. In the first place, was there a want of ordinary care on the part of the defendant town, acting through its officers, in the construction of the work which was the cause of the damage which occurred?

In the next place, was there a want of ordinary care on the part of the plaintiffs in the construction of their bridge and abutment, which contributed to the loss or damage, to the occurrence of the accident?

In the next place, was there such an outburst of the powers of nature which could not be reasonably anticipated or provided for by men in the use of ordinary care on this particular occasion, as to contribute to or cause the damage complained of?

As to two of these matters you perceive that a careful definition of ordinary care is required for a full understanding of what it imports.

You cannot give an abstract definition of ordinary care that would apply to all cases. What might be ordinary care in one set of circumstances might be no slight negligence under other and different circumstances.

Ordinary care has relation to, and must be measured by, the work or thing to be done, and the means employed or the natural instrumentalities affected, and their capacity and liability to work evil as well as good.

We must look at the work to be done, and regard its difficulties, dangers, responsibilities and probable results and effects, and then say what would a reasonable and prudent man do in such a case.

The word ordinary has a popular sense which would relax very much the true and real requirements of the rule.

The law means by ordinary care, the care which reasonable men of ordinary prudence, having reasonable and proper regard for the rights and interests of those whom their acts may affect, use under like circumstances. If you use "ordinary" merely in the sense of general, common and customary, it does not convey the whole true signification ; but you will remember that ordinary care is a term which has relation to the situation of the parties on each side, and to the business in which they are respectively engaged.

Reasonable care is perhaps as good a term, and conveys as correct an idea to you of the kind of care required.

The care and diligence must vary according to the exigencies which require vigilance and attention, and conform in amount and degree to the particular circumstances under which they are to be exerted. Then you perceive that in determining what would be ordinary care in the erection of this bridge, the size and character of the stream, its liability, greater or less, to sudden and violent rises and overflows, the character of the soil on the opposite bank, and its liability to scour from the nature of the materials of which it was composed or the conformation of the shore, and the natural and probable effects of the action of the water if the current was diverted from the natural channel should be considered.

If people have to deal with a question involving the directing of great natural forces, as for example the movement of large and rapid bodies of water, or such as are liable to be made dangerous and destructive by violent rains, the very fact of the risk and danger is to be taken into account in determining whether the party directing the work acted with due and ordinary care.

Ordinary care is that care which reasonable men of ordinary prudence and capacity, having due and reasonable regard for the rights and interests of all who are liable to be affected by their acts, would use under all the circumstances in which they are called to act.

Now, gentlemen, that definition you will observe and apply in the consideration of this case, to both these parties.

It is for the plaintiffs to establish to your satisfaction that the

sole, true and efficient cause of the damage which occurred here was the want of such ordinary care on the part of the defendants.

Now, gentlemen, I have a word to say to you with regard to the force of the word sole in that connection. You are not to enter into a nice logical discussion with regard to the meaning and effect of that term. You will apply your common sense and determine what was the real true efficient cause of the accident, without which it would not have happened. It is a question for you to settle.

It is for the plaintiffs to satisfy you that it was by reason of negligence on the part of the defendants to construct their work with ordinary care as I have defined it. Incidentally comes in here a question which you will consider and determine from the testimony how the fact was, with regard to the violence of the storm. We all know perfectly well that now and then arises an outburst of the powers of nature, coming at long intervals, perhaps not more than once in a generation, sometimes occurring more frequently, which is beyond all expectation, and which no man could reasonably anticipate.

The party defendant is not liable for that which was caused by any such catastrophe.

If this storm and overflow was of that description, such a catastrophe as reasonable men could not have expected, they were not under any obligation to foresee and provide for it.

Now you have heard the comments of counsel upon the testimony in regard to this matter of overflow and height of water, and you will determine whether it was a storm of that description, realizing the force and effect of the testimony as bearing upon the question, of what was the freshet at that point, at the time when this damage was done, and whether or not it was of the character claimed.

I now present to you very briefly the general position of these parties upon the questions of fact.

On the part of the defendants, it is claimed that the Lisbon selectmen employed an engineer to direct them, and acted with ordinary care in making their embankment instead of bridging the western channel.

The employment of an engineer is for your consideration in determining this question of ordinary care, the force and effect of which you will settle and determine for yourselves.

It is not conclusive evidence that the work was properly done, or that there was no want of ordinary care in its construction. It is for you to look at the examination which was made, and determine what matters the attention of the engineer was directed to, and whether or not that covered the ground which ordinary care should cover, under the definition which I have given you. Then it is claimed on the part of the defendants, that the washing of the bank was below the Topsham abutment, and the damage was not occasioned by the change of the current; and you will call readily to mind the matters to which your attention was called in enforcing it; that the place where the damage commenced, shows that it was not produced by the embankment, but by the faulty construction of the wing wall on the upper side of the Topsham abutment, a wrong angle at the head of the abutment caused the water to strike directly against the Topsham abutment. They claim also, and it is one of the questions which you are to settle; that the plaintiffs' abutment was not constructed with ordinary care and skill, and that this contributed to produce the damage. They tell you that the experts agree that it was not a suitable mode of construction, and that the erection of a new abutment in a different manner, is a substantial confession that the first was unsuitable.

You will weigh that testimony and determine what was the action of the water there, and what was the true cause of the injury to the abutment, and whether the want of ordinary care in the construction of the abutment contributed in any degree to produce the injury.

In the consideration of that, you will apply the same definition of ordinary care which I gave you, in settling the question whether the defendants were wanting in ordinary care so far as the construction of their road was concerned.

They say also this was one of those extraordinary freshets which nobody can be supposed to foresee or provide for.

On the other hand, the plaintiffs claim that the work was done by the selectmen of Lisbon without that due and ordinary care, and with an eye to save expense to their own town, and without regard to the effect which the change in the direction of the current of the stream there would have upon the opposite bank, that if they consulted an engineer that was not the subject of the inquiry, but substantially whether the work could be done in such a way as to make the embankment stand.

It is claimed on the part of the plaintiffs that the result was that they changed what would have been a broad and easy channel into a narrow destructive stream, turning its force on to the abutment, which had stood through the ice freshet of the previous winter before the embankment was made without damage, but it was carried away by the crowding of the current over and against it, and that was the true and efficient cause of the damage without which it would not have occurred. That is for you to settle.

The plaintiffs claim that there had been, while this matter of building the embankment was pending, a freshet as high as this which should have warned the men in the exercise of ordinary care to provide for such a freshet as this one, that the real point of inquiry made of Mr. Reed, was whether there would be sufficient space left to discharge the water without overflowing or carrying away the dump, and that the statement was that there would be no danger with suitable masonry.

The plaintiffs claim that there was no fault in the Topsham abutment, that it was sufficient.

Now, gentlemen, I have called your attention to those questions which you are to pass upon ; take this case and settle it according to your finding upon these three questions.

Was this damage occasioned in part by an extraordinary outburst of the powers of nature in storm and freshet, such as men of ordinary prudence, could not be reasonably expected to anticipate or provide for ? If it was, the plaintiffs cannot recover. Was it occasioned in any degree by the plaintiffs' want of ordinary care as I have defined it to you, in the construction of their own abutment ?

If so, the plaintiffs cannot recover.

Or was the real true efficient cause, the want of ordinary care on the part of the defendants in the construction of their work on their side of the stream. If that was the cause, the plaintiffs are entitled to a verdict.

If that should be your conclusion, the question will arise, what is the measure of damages in the case.

The plaintiffs, if entitled to recover at all, are entitled to recover upon the ground that they are bound by law to make that way safe and convenient for travelers, and for such expense as they have been necessarily put to on account of the damage done by such want of ordinary care on the part of the defendants amounting to the true and efficient cause of the injury. They would be entitled to recover not necessarily the amount which they have expended, but what, under all the circumstances, it was necessary and suitable they should expend to make the way there safe and convenient for travelers, not necessarily limited to the amount which the original abutment cost.

The inquiry on that branch of the case, assuming that the damage, the washout, was caused by the negligence of defendants, is, what was it necessary for the plaintiffs to do, and what was the reasonable and proper cost of making a suitable and proper way there, such as they were bound to make by law.

If the bridge they actually constructed since was made unnecessarily expensive, that would not be a subject of recovery against the defendants.

It is for you to look upon the matter and say what was done, whether or not the plaintiffs are entitled to recover, and if so how much."

The defendants also excepted to so much of the charge, 1, as relates to the sole cause of the injury; 2, to so much as relates to extraordinary freshets, and their influence in contributing to the injury; and 3, to so much as relates to the measure of damages.

*J. Baker*, for the defendants.

*W. L. Putnam*, for the plaintiffs.

BARROWS, J. The case is presented upon exceptions, and mo-

tion to set aside the verdict as against evidence and the weight of evidence, and because the defendants deem the damages excessive.

The action is *case*—setting forth the existence of a highway between the two towns crossing Little River, and of an abutment, bridge and embankment on the Topsham side forming a part of said highway, which the plaintiff town was bound by law to keep in repair, and alleging a negligent and unlawful obstruction of the natural course of the water by the defendants, turning the stream against the eastern bank, causing it to cut a new channel, destroying and washing away the plaintiffs' abutment, bridge and embankment, and putting them to great expense to restore the same as they were obliged by law to do.

To this the defendants pleaded not guilty with a brief statement setting out a legal location in the town of Lisbon across the western branch of Little River, and the island between the western and eastern channels, to Topsham, and alleging that all they did in the premises was done with ordinary care and skill, and without negligence, in pursuance of their legal obligation to construct the way thus located.

Much testimony was offered and heard, and the jury were taken to the locality, and had a view of the premises.

Neither of the exceptions to the admission or exclusion of testimony is relied on, or referred to by the defendants' counsel in argument. Nor do we see any occasion to notice them in detail. The rulings in those matters seem to have been correct.

The exceptions to the permission of the amendment, and to the refusal to rule that the location of the road in Topsham was insufficient to require the town to make the road or abutment or bridge, and that for that reason the plaintiffs could not recover, though prominent in the bill of exceptions, are not alluded to by the able counsel in argument, and we suppose may be regarded as waived. But however that may be, the exceptions cannot avail the defendants.

It is questionable whether it is necessary to charge that the act was negligently or unlawfully done, when the obstruction of the natural course of a stream to the injury of the plaintiff is alleged. It would rather seem that the justification of the act should appear

in the defendants' brief statement. So these defendants seem to have thought when they filed their pleadings, and the authorities cited by the plaintiffs look that way.

But if this were not so, and the amendment were material, it is well settled that the allowance of such an amendment, under the circumstances, in order to place upon the record more distinctly the issue which the parties had been litigating, is within the discretionary power of the court, and not open to exceptions. Howe's Practice, p. 385. *Pullen* v. *Hutchinson*, 25 Maine, 249.

Under statutes and rules similar to our own, touching amendments, it may be done even after verdict. *Bannon* v. *Angier*, 2 Allen, 128. *Colton* v. *King*, id., 317.

The necessity for the eighth requested instruction was obviated by the amendment. All that was applicable to the case in that request appears in the charge.

Nor would it have been proper to give the instruction requested, with regard to the obligation of Topsham to build the road and bridge. The records taken as a whole, showed jurisdiction and an actual location. Until quashed the validity of that location could not be questioned in a suit like this. *Cyr* v. *Dufour*, 62 Maine, 20. Nor do we observe any essential defects in the location. *Detroit* v. *Co. Com'rs*, 52 Maine, 210.

No complaint is now made that the jury were not instructed substantially in conformity with the second and third requests. But the defendants insist upon their exceptions to the omission to give their fourth, fifth, sixth and seventh requested instructions, specially in the form requested, and to the instructions which were given respecting the points to which those requests relate.

These requests relate to the effect of alleged contributory causes of the damage which the plaintiffs had suffered.

To test the justice of the defendants' complaints, we must look to see what positions were taken by the parties upon the evidence and what instructions were in fact given. The defendants contended that such contributory causes might be found in the negligence of plaintiffs, who (they claimed) had built an unsuitable and unsafe abutment, and in an unusual and extraordinary freshet.

Now, touching these matters, the judge, after giving an extended

definition of the term ordinary care as used in this connection told the jury : "It is for the plaintiff to establish to your satisfaction that the sole, true and efficient cause of the damage which occurred here was the want of such ordinary care on the part of the defendants." The jury were further instructed that the general result must depend upon their answers to three questions which were thus stated to them. "Was this damage occasioned in part by an extraordinary outburst of the powers of nature in storm and freshet, such as men of ordinary prudence could not be reasonably expected to anticipate or provide for ?' If it was, the plaintiffs cannot recover. Was it occasioned in any degree by the plaintiffs' want of ordinary care as I have defined it to you, in the construction of their own abutment ? If so, the plaintiffs cannot recover. Or was the real, true, efficient cause the want of ordinary care on the part of the defendants in the construction of the work on their side of the stream ? If that was the cause, the plaintiffs are entitled to a verdict."

The attention of the jury was thus directly called to the only contributory causes which had been surmised or suggested, and the jury were told that if the mischief had been occasioned "in part" or "in any degree," by either of them, the plaintiffs could not recover. This in addition to the previous instruction, that it was incumbent on the plaintiffs to satisfy the jury that the sole, true and efficient cause was the defendants' want of ordinary care.

The defendants object to the use by the judge of the term "real, true, and efficient cause" in this connection; but such epithets were properly descriptive of the cause for which the jury were to look. The defendants complain also of the caution given to the jury not to indulge in nice logical refinements as to what constitutes a sole cause, but to apply their common sense and ascertain what was the real, true, efficient cause of the damage. Such a caution though perhaps needless might prevent the jury from becoming involved in a fruitless discussion about "a chain of causation in successive links, endless ;" and it is entirely consistent with the doctrine which this court has long held, as illustrated in *Bigelow* v. *Reed*, 51 Maine, 325 ; *Willey* v. *Belfast*, 61 Maine, 569 ;

*Stone* v. *Augusta*, 46 Maine, 127 ; and *China* v. *Southwick*, 12 Maine, 238.

The defendants' counsel thinks that the language of the judge conveyed to the jury an erroneous idea of the character of the storm and freshet which could be regarded as a contributory cause. Possibly the judge's imagination was affected by the eloquent description which the defendants' counsel had given of the out-pouring of the heavens that day ; but the test by which the jury were directed to try the storm was correct, and sufficiently prosaic. They were directed to inquire whether it was such a storm as men of ordinary prudence could not be reasonably expected to antici-pate and provide for; if the disaster was attributable in part to such a storm then the plaintiffs could not recover. We think the instructions taken together gave the jury the correct rule on these points. *Gray* v. *Harris*, 107 Mass., 492. If so the defendants cannot sustain exceptions because the precise form which they preferred and suggested was not adopted. *State* v. *Pike*, 65 Maine, 111, and cases there cited.

It is also claimed that the ruling as to the measure of damages was indefinite and wrong, and prejudicial to the defendants. Upon that branch of the case the jury were told that "the plaintiffs if entitled to recover, are entitled to recover upon the ground that they are bound by law to make that way safe and convenient for travelers." The measure of damages given them was the expense that the plaintiffs had necessarily incurred on account of the dam-age done—"not necessarily the amount which they have expend-ed, but what under all the circumstances, it was necessary and suitable they should expend to make the way there safe and con-venient for travelers—not necessarily limited to the cost of the original abutment."

If under the rule given, the jury had gone beyond the amount which the plaintiffs had actually expended and interest, we think there would have been some ground for complaint. The judge should have said, "not necessarily the amount which they have expended, but so much thereof as under all the circumstances, it was necessary and suitable they should expend to make the way

there safe and convenient for travelers, not necessarily limited to the cost of the original structure."

The plaintiffs were entitled to compensation for the expense which they had necessarily incurred in consequence of the fault of the defendants. It could not be exactly defined. It could not in the nature of things be limited to the cost of the original structure. That might not be a safe or a just rule for either party. The right of the plaintiffs to recover anything arose out of their obligation to maintain the way and bridge there. To replace it after its destruction might cost less or more than it did to build it in the first place. It would probably be more. But, less or more, the expense which the plaintiffs had reasonably and necessarily incurred to fulfil their obligation to the public once discharged but imposed anew by the wrongful act of the defendants was the proper sum to compensate them for the injury they had suffered.

Some modification might have been necessary if the structure had been old or decayed so that a speedy renewal would in any event have been necessary. Such was not the case. The work was substantially new. The additional outlay was the natural, necessary and direct consequence of the defendants' negligence and wrong doing. Apparently the jury made some allowance for supposed needless expenditure; for the amount of the verdict does not cover the actual cost of repairs and interest. The defendants did not suffer by the indefiniteness of the instruction. If either party has cause to complain of incompleteness upon this point, it is the plaintiff. The instruction was in the main correct. *Freedom* v. *Weed*, 40 Maine, 383. *Andover* v. *Sutton*, 12 Metc., 182.

The motion to set aside the verdict was vigorously pressed in argument. But we are not satisfied that the verdict was wrong. Manifestly it does not come within the rule so often enunciated respecting the setting aside of verdicts as against evidence.

The act of the defendants in entirely closing up the roomy western channel of what in times of freshet is a rough, rapid and powerful torrent, resulted in the demolition of the plaintiffs' bridge and abutment, the sufficiency of which, if the water had been left to follow its natural course and flow, had been well tested and

established in a freshet occurring before the defendants changed the course of the stream by their embankment, nearly if not quite as high and dangerous as the one in question.

We are inclined to think with the jury that the real, true, efficient cause of the mischief—to all legal intents and purposes the sole cause—was this act of the defendants, done without reasonable care and forethought as to the probable results.

The defendants must abide the consequences.

*Motion and exceptions overruled.*

APPLETON, C. J., WALTON, DANFORTH, VIRGIN and PETERS, JJ., concurred.