OPINION
OF THE JUSTICES OF THE SUPREME JUDICIAL COURT
GIVEN UNDER THE PROVISIONS OF SECTION 3
OF ARTICLE VI OF THE CONSTITUTION

QUESTIONS
PROPOUNDED BY THE HOUSE OF REPRESENTATIVES
IN AN ORDER PASSED APRIL 19, 1951
ANSWERED APRIL 21, 1951
HOUSE OF REPRESENTATIVES ORDER PROPOUNDING
QUESTIONS

STATE OF MAINE

In House of Representatives

Whereas, there is now pending before the House of Representatives of the 95th Legislature of the State of Maine,

Bill, "An Act to Facilitate Extension of the Maine Turnpike" (House Paper 686) (Legislative Document 416), a printed copy of which is hereto attached and made a part hereof; (Exhibit "A")

Whereby it is proposed to add a new subsection VIII to Sec. 107 (Limitation on Use of General Highway Funds) of Chap. 20 (State Highway Department) of the Revised Statutes of 1944, which proposed new subsection VIII provides for the payment by the Treasurer of the State to the Maine Turnpike Authority created by Chap. 69 of the Private and Special Laws of 1941, a portion of the state tax on gasoline for the purposes more fully stated therein, and

Whereby in the last sentence of the proposed new subsection VIII it is provided that "Upon the issuance of Turnpike revenue bonds or Turnpike revenue

refunding bonds by the Authority under the provisions of Chap. 69 of the Private and Special Laws of 1941, as amended and supplemented, the provisions of this subsection shall be deemed to constitute a material part of the contract between the authority and the holders of such bonds," and

Whereas, an amendment is proposed to said Bill, a copy of which proposed amendment is hereto attached and made a part hereof; (Exhibit "B") and

Whereas, grave doubt has arisen as to the constitutionality of such Bill, with or without the proposed amendment, with relation to

1. The pledging of the credit of the State, directly or indirectly, and

2. The diversion of State Highway funds, and

Whereas, to the House of Representatives of the 95th Legislature it appears that the questions of law herein raised are important and that the occasion is a solemn one; NOW, THEREFORE, BE IT ORDERED, That the Justices of the Supreme Judicial Court are hereby respectfully requested to give to the House of Representatives, according to the provisions of the Constitution in this behalf, their opinion on the following questions, to wit:

Question 1. Is the Maine Turnpike Authority a "State Department" within the meaning of Article LXII of the Constitution?

Question 2. Would Bill, "An Act to Facilitate Extension of the Maine Turnpike" (House Paper 686) (Legislative Document 416) if enacted by the Legislature, in its present form, pledge the credit of the State directly or indirectly, contrary to the Constitution?

Question 3. Would Bill, "An Act to Facilitate Extension of the Maine Turnpike" (House Paper 686) (Legislative Document 416) if enacted by the Legislature, in its present form, divert State Highway Funds contrary to the Constitution?

Question 4. Would Bill, "An Act to Facilitate Extension of the Maine Turnpike" (House Paper 686) (Legislative Document 416) if amended as proposed (Exhibit "B") and if enacted, pledge the credit of the State directly or indirectly, contrary to the Constitution?

Question 5. Would Bill, "An Act to Facilitate Extension of the Maine Turnpike" (House Paper 686) (Legislative Document 416) if amended as proposed (Exhibit "B") and if enacted, divert State Highway Funds contrary to the Constitution?

Exhibit "A"

## NINETY-FIFTH LEGISLATURE

Legislative Document                          No. 416

H. P. 686        House of Representatives, February 2, 1951.

Referred to Committee on Highways. Sent up for concurrence and ordered printed.

HARVEY R. PEASE, Clerk.

Presented by Mr. Sinclair of Pittsfield.

## STATE OF MAINE

## IN THE YEAR OF OUR LORD NINETEEN HUNDRED FIFTY-ONE

**AN ACT to Facilitate Extension of the Maine Turnpike.**

**Preamble.** Whereas, by chapter 69 of the private and special laws of 1941, approved April 17, 1941 (herein some-

times called the "act"), the Maine Turnpike Authority (herein sometimes called the "authority") was duly created as a body corporate and politic and was authorized and empowered to construct, maintain and operate in integral operating units a turnpike from a point at or near Kittery in York county to a point at or near Fort Kent in Aroostook county, and to issue turnpike revenue bonds payable solely from revenues to pay the cost of such construction; and

Whereas, it is declared by the act that the accomplishment by the authority of the authorized purpose stated in the act is for the benefit of the people of the state of Maine and for the improvement of their commerce and prosperity in which accomplishment the authority will be performing essential governmental functions, and when all bonds issued by the authority for paying the cost of the turnpike and the interest thereon shall have been paid or a sufficient amount for the payment of all such bonds and the interest to maturity thereon shall have been set aside in trust for the benefit of the bondholders and shall continue to be held for that purpose, the authority shall be dissolved and the turnpike, its connecting tunnels and bridges, overpasses and underpasses, its leases, rights, easements, franchises, land and property shall become the property of the state of Maine and all revenue therefrom shall become payable to the treasurer of state as a part of the highway funds of the state and the turnpike, its connecting tunnels, bridges, overpasses and underpasses shall be maintained and operated by the state highway commission, and all funds of the authority not required for the payment of the bonds and all machinery, equipment and other property belonging to the authority appertaining to the maintenance and operation of the turnpike shall be vested in the state highway commission; and

Whereas, the first integral operating unit of the turnpike, extending from a point in the town of Kittery at or near

the approach to the interstate toll bridge over the Piscataqua river to a point in the city of Portland in Cumberland County connecting with Congress street in the Stroudwater section, with an approach connecting with U. S. Route No. 1 at or near Cash Corner in South Portland, has been constructed by the authority and such construction was financed by an issue of turnpike revenue bonds of the authority in the aggregate principal amount of $20,600,000, all of which are now outstanding and unpaid; and

Whereas, the construction of an additional unit of the turnpike, extending from the present northern terminus of the first unit at Portland into or through the heart of the state will greatly improve the commerce and prosperity and the health and living conditions of all the people in the state; and

Whereas, the construction of such additional unit will relieve traffic congestion on existing highways which is rapidly becoming a menace to the safety of the inhabitants of the state, and will relieve the highway funds of the state of enormous expenditures for widening and constructing extra lanes on existing highways; and

Whereas, the construction and operation of such additional units will substantially add to the funds available by the state of Maine for construction of public highways and will attract many motorists to Maine who will, in turn, buy more gasoline and further increase revenues of the state for use on other public highways; and

Whereas, the provisions of this supplemental act are necessary to effect the financing of such additional unit; now, therefore,

Be it enacted by the People of the State of Maine, as follows:

**R. S., c. 20, § 107, sub-§ VIII, additional.** Section 107 of chapter 20 of the revised statutes is hereby amended by

adding thereto a new subsection, to be numbered VIII, to read as follows:

'VIII.  For returning and paying to the Maine Turnpike Authority, created by chapter 69 of the private and special laws of 1941, an amount equal to the amount of the tax on that number of gallons of internal combustion engine fuels which are consumed on each integral operating unit of the turnpike theretofore constructed by the authority under the provisions of said chapter 69, the amount to be paid to the authority to be calculated on the basis of 1 gallon of fuel for each 15 miles of motor vehicle travel over each such unit.  On or before the 15th day of each month, the executive director of the authority shall certify to the treasurer of state the number of miles of motor vehicle travel over each such unit in the preceding calendar month, and within 15 days after the receipt of each such certificate, the treasurer of state shall pay to the secretary and treasurer of the authority, or to such trustee or cotrustee of funds of the authority as shall be designated by the authority, the amount payable to the authority according to such certificate and calculated as above set forth; provided, however, that there shall be deducted from the amount payable for the last month of each calendar year a pro rata part of the amount expended during such calendar year under the provisions of subsection IV.  The amount so paid to the authority on account of each such unit shall be deemed to be revenues of such unit the same as tolls and other revenues collected by the authority.  Until bonds are issued by the authority for paying the cost of an additional integral operating unit of the turnpike, all moneys received by the turnpike authority under the provisions of this subsection shall be deposited in a special fund and may be used by the authority only for the purpose of conducting traffic and engineering studies preparatory, and deemed by the authority necessary, in order to extend or construct an ad-

ditional operating unit of the turnpike. Upon the issuance of any turnpike revenue bonds or turnpike revenue refunding bonds by the authority under the provisions of chapter 69 of the private and special laws of 1941, as amended and supplemented, the provisions of this subsection shall be deemed to constitute a material part of the contract between the authority and the holders of such bonds.'

Exhibit "B"

Committee Amendment "A" to H. P. 686, L. D. 416
Bill "An Act to Facilitate Extension of the Maine Turnpike"

Amend said Bill by striking out everything after the words "subsection IV." and inserting in place thereof the following:

Until bonds are issued by the authority for paying the cost of an additional integral operating unit of the turnpike, all monies received by the turnpike authority under the provision of this subsection shall be deposited in a special fund and may be used by the authority only for the purpose of conducting traffic and engineering studies preparatory, and deemed by the authority necessary, in order to extend or construct an additional operating unit of the turnpike. Upon the issuance of any turnpike revenue bonds or turnpike revenue refunding bonds by the authority under the provisions of Chapter 69 of the Private and Special Laws of 1941, as amended and supplemented, the amount so paid to the authority on account of each such unit shall be deemed to be revenue of such unit the same as tolls and other revenues collected by the authority.

## ANSWER OF THE JUSTICES

To the Honorable House of Representatives of the
State of Maine:

The undersigned, Justices of the Supreme Judicial Court,

having considered the questions submitted to them by the Order of the House of Representatives passed April 19, 1951, respectfully answer as follows:

The Maine Turnpike Authority is not a "State Department" within the meaning of Article LXII of the Amendments to the Constitution. Our answer to Question 1, therefore is "No."

The Maine Turnpike Authority not being a state department within the meaning of said provision of the Constitution, the payment to it of any part of the revenues referred to in said provision of the Constitution, as provided for in House Paper No. 686, Legislative Document No. 416, being an act entitled "An Act to Facilitate Extension of the Maine Turnpike," either in its present form or if amended as proposed by Exhibit "B" would constitute a diversion thereof contrary to said provision of the Constitution. Our answer to Questions 3 and 5 is "Yes."

In view of the answers to Questions 1, 3 and 5 it seems unnecessary to answer Questions 2 and 4.

Dated at Portland, Maine, this twenty-first day of April, 1951.

Respectfully submitted:

HAROLD H. MURCHIE

SIDNEY ST. F. THAXTER

RAYMOND FELLOWS

EDWARD F. MERRILL

WILLIAM B. NULTY

ROBERT B. WILLIAMSON