WILLIAM O. FROTHINGHAM *vs.* ALTON C. MAXIM.

Oxford.   Opinion March 14, 1928.

*Matthew McCarthy*, for plaintiff.
*Frederick R. Dyer*, for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, STURGIS, PATTANGALL, JJ.

STURGIS, J.   Action of debt on a contract of indemnity under seal in the form of a bond given to the sheriff of Oxford County, indemnifying him and one of his deputies from all cost or damage in consequence of making an attachment.   The case comes forward on Report.

January 23, 1924, the defendant in this suit began a trover action against M. J. Marshall of Bethel, and delivered the writ through his attorney to the plaintiff's deputy, Fred E. Wheeler, with instructions endorsed upon the process to "attach truck and also attach real estate."   The truck was then in a barn connected with the house occupied by Marshall and his family, the doors to

the barn being fastened on the inside, and the door to a connecting shed padlocked on the outside. The deputy upon reaching the Marshall premises discovered this situation, and failing to obtain permission from the caretaker of the property to enter the barn and make the attachment, called the sheriff and the attorney of this defendant upon the telephone, informed them that the barn was locked, and stated his unwillingness to force an entry and make the attachment without an indemnity bond. A conference between the sheriff and the plaintiff in the trover action followed, with the result that the idemnity contract here in suit was executed, and the deputy through the sheriff was instructed by the plaintiff in trover to break into the barn and make the attachment. He did so, breaking the padlock on the door of the shed which connected the house proper and the barn. For these acts, in *Marshall* v. *Wheeler*, 124 Maine, 324, judgment was recovered against the deputy with damages fixed at $1000. This judgment was satisfied before the instant suit was begun, and the failure of the defendant in this action to pay that judgment is the breach of the covenant of indemnity here charged.

The contract of indemnity is in form of a bond, the condition of which is "that whereas said Frothingham has a deputy sheriff, Fred E. Wheeler, who is to serve a civil process and attachment against M. J. Marshall in favor of Alton C. Maxim in Bethel, Maine, and to attach a truck in the barn of said Marshall, now therefore if said Maxim shall protect said Frothingham and said Wheeler from all cost or damage in consequence of making said attachment, then this bond shall be null and void, otherwise remain in full force & effect." This action, therefore, is clearly for the benefit of the deputy. The plaintiff, however, is sole obligee named in the writing and the suit is properly brought in his name.

The rule is that when a contract is under seal, the legal title is in the obligee and action must be brought in his name. This is true although the covenant is expressed to be with one person for the benefit of another. *Hoxie* v. *Weston*, 19 Maine, 322, 329; *County of Washington* v. *Brown*, 33 Maine, 442; *Packard* v. *Brewster*, 59 Maine, 404; *Farmington* v. *Hobert*, 74 Maine, 416; *Carleton* v. *Bird*, 94 Maine, 182. No question is raised as to the

sufficiency of the pleadings in the matter of a statement of the interest of the deputy for whose benefit the suit is brought. If raised it could not avail. In a suit upon a covenant for the benefit of a third person, the statement of the beneficiary's use is not a material part of the pleadings, but merely to enable the Court to know who is equitably entitled to control the suit. 9 Corpus Juris, 94; *Shott* v. *Youree*, 142 Ill., 241.

At common law a sheriff was bound at his peril to do his duty and to judge both the law and the facts, but in modern times the responsibility of the sheriff in this respect has been much modified, in some jurisdictions by statute, but in this State as in others by judicial decision. And while the sheriff is directed by statute (R. S., Chap. 85, Sec. 10) to serve all civil precepts committed to him, he is now given the right to require indemnity before proceeding with attachment or levy in case he reasonably anticipates that he may subject himself to some liability by proceeding. *Sibley* v. *Brown*, 15 Maine, 185; *Gower* v. *Emery*, 18 Maine, 79; *Lothrop* v. *Arnold*, 25 Maine, 136.

On the other hand, it is a well established principle that a bond given to indemnify an officer for a known violation of duty or against the consequences of intentional and known commission of a trespass, crime or wrong is void as opposed to public policy and cannot be enforced. The rule is stated by Mr. Freeman in his treatise on the Law of Executions, Vol. II, Sec. 275a, in this language: "It must be remembered in considering all contracts of indemnity, however expressed, that the law will not tolerate any agreement having for its object the commission of a known wrong. Hence, it is essential to the validity of every bond or other agreement for indemnity that there was no doubt respecting the validity of the act in question, for if the parties knew, or were chargeable with knowledge, that it was criminal or unlawful, or necessarily constituted a trespass or an invasion of the just rights of another, there can be no contract, whether expressed or implied, that the agent shall, by his principal, be indemnified for the doing of such act."

Thus indemnity given to an officer for neglecting to make an arrest on an execution is void, *Hodsdon* v. *Wilkins*, 7 Maine, 113; or against permitting a voluntary escape, *Ayers* v. *Hutchins et*

*al*, 4 Mass., 370; or for wrongfully releasing a defendant from arrest, *Webber* v. *Blunt*, 19 Wend. (N. Y.), 188. So, too, indemnity given an officer against the consequence of a wilful trespass in entering a dwelling-house to make a levy is void. *Griffith* v. *Hardenburgh*, 41 N. Y., 464.

On the other hand, where the act against the consequences of which the indemnity is given, though in fact illegal, is performed under a claim of right and a belief on the part of the indemnitee that it is a legal act, as for instance an apparently legal act which proves to be a trespass, the indemnity is valid and enforceable. A correct statement of this exception is found in *Jacobs* v. *Pollard*, 10 Cush. (Mass.), 287, wherein that Court says: "No one can be permitted to relieve himself from the consequences of having intentionally committed an unlawful act, by seeking an indemnity or contribution from those with whom or by whose authority such unlawful act was committed. But justice and sound policy, upon which this salutary rule is founded, alike require, that it should not be extended to cases, where parties have acted in good faith, without any unlawful design, or for the purpose of asserting a right in themselves or others, although they may have thereby infringed upon the legal rights of third persons. It is only when a person knows, or must be presumed to know that his act was unlawful, that the law will refuse to aid him in seeking an indemnity or contribution. It is the unlawful intention to violate another's rights, or a wilful ignorance and disregard of those rights, which deprives a party of his legal remedy in such cases." The general rule and this exception are discussed at length, with the citation of numerous authorities, in the editorial note to *Ives* v. *Jones*, 3 Ired. (N. C.), 538, reported in 40 American decisions, 421, as also in the note in 86 American State Reports, 554.

Included within the foregoing rules, it is to be inferred, is the principle that although the promisor may have contemplated a wilful trespass that fact will not avoid the indemnity contract if the act was not palpably illegal and the promisee proceeded in the belief that he was entitled to perform the act for which indemnity is given. 16 Am. & Eng. Encyc., 2d Ed., 172; *Jacobs* v. *Pollard*, supra; *Avery* v. *Halsey*, 14 Pick. (Mass.), 174; *Stone*

v. *Hooker*, 9 Cow. (N. Y.), 154; *Coventry* v. *Barton*, 17 Johns. (N. Y.), 142.

As stated in *Illsley* v. *Nichols*, 12 Pick. (Mass.), 269, it is clear from all the authorities and wholly undisputed as a rule of law that the act of breaking the outer door of a dwelling-house for the purpose of making an attachment against the will of the owner is unlawful. It is a trespass. The primary question, therefore, here is, was the indemnity contract in suit entered into in anticipation of a trespass known to be such?

Both the shed and the barn were part of the dwelling-house. In *Marshall* v. *Wheeler*, supra, this Court passed upon the question of the legality of the entry of the deputy into the shed, and there held that the shed was part of the dwelling-house "which an officer may not enter by force or against the will of the owner or tenant to serve a civil process . . ." In reaching that conclusion this Court there reviewed the common law, defining and construing the rule that "a man's dwelling-house is still his castle which may not be invaded against his will except by the State in search of violators of the law or upon certain processes of which a writ of attachment is not one." The court there drew upon the analogies found in the criminal law for its definition of a dwelling-house, and that opinion must be read as determining, in civil cases involving service of a writ of attachment, that the term "dwelling-house" embraces the entire cluster of buildings, main and auxiliary, used for abode. In the instant case we think the dwelling-house included not only the connecting shed but also the barn joined by it to the house.

The sheriff, who made the contract of indemnity with the defendant, knew that the proposed entry by his deputy for which he demanded indemnity was a trespass. His testimony is:

"Q — You knew that your deputy had no right to break into a dwelling house?

A — Yes, nor in any building.

Q — Was it your assumption that an attachment couldn't be made of an automobile truck locked in a barn?

A — Yes, sir.

Q — When you took this bond, according to your interpretation of the law you knew he was going to commit an illegal act?

A — I felt that he was."

A deputy sheriff is the servant or agent of the sheriff. *Smith* v. *Wadleigh*, 18 Maine, 95. The acts of the deputy are in law the acts of the sheriff, *Smith* v. *Berry*, 37 Maine, 298, and the latter is liable for his deputy's tortious acts done *colore officii.* R. S., Chap. 85, Sec. 8; *Harrington* v. *Fuller*, 18 Maine, 277; *Kendrick* v. *Smith*, 31 Maine, 165. Persons aggrieved by the deputy's acts have a remedy either against the sheriff or the deputy at their election. *Walker* v. *Foxcroft*, 2 Maine, 247, 249; *Severy* v. *Nye*, 58 Maine, 246.

In his contract with the defendant the sheriff sought to protect both himself and his deputy from the consequences of a known trespass. His contract was clearly void. The deputy's rights under it are those of a beneficiary under a contract made for his benefit by another. Unless there was a valid, binding contract no right arose in his favor. Williston on Contracts, Vol. I, p. 737; Pollock on Contracts, 3rd Am. Ed., 271. One who seeks to take advantage of a contract made for his benefit by another, takes it subject to all legal defenses and to all inherent equities arising out of the contract, unless the element of estoppel has entered. *Jenness* v. *Simpson*, 84 Vt., 127; 71 Am. St. Rep., 202 n.; 6 R. C. L., 886; 13 C. J., 699. To use the often quoted words of the Court in *Dunning* v. *Leavitt*, 85 N. Y., 30, "it would be contrary to justice or good sense to hold that one who comes in by . . . 'the privity of substitution' should acquire a better right against the promisor than the promisee himself had."

We are convinced that these rules apply whether the action be by the beneficiary in his own name on a simple contract or in his behalf by the promisee on a contract under seal. And in the instant case the bond given to the sheriff to indemnify him and his deputy against the consequences of a trespass, known to be such by the sheriff, upon the grounds of public policy is void both as to the sheriff and the deputy.

This conclusion renders a determination of other questions of law and fact involved in the case unnecessary. Under the rules of law stated the defendant must prevail, and the mandate is,

*Judgment for defendant.*