MARGUERITE M. NELSON
*vs.*
MAINE TURNPIKE AUTHORITY

Androscoggin.   Opinion, April 24, 1961.

*Berman & Berman,* for plaintiff.

*Linnell & Choate, G. Curtis Webber,* for defendant.

SITTING: WILLIAMSON, C. J., TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ. WEBBER, J., did not sit.

WILLIAMSON, C. J.   The issue is whether the Maine Turnpike Authority is immune from tort liability for personal injuries to a traveler arising from negligence in the maintenance of the Turnpike. The action was brought before the adoption of the new rules of civil procedure and is before us

on exceptions by the plaintiff to the sustaining of defendant's demurrer in the Superior Court.

The Maine Turnpike Authority was created by the Legislature in P. & S. Laws, 1941, c. 69. Provisions of the Act on which, in the words of the plaintiff, "this case hinges" are:

> "Sec. 4. Powers. (a) The 'Maine turnpike authority' shall be a body both corporate and politic in the State of Maine and shall have powers (1) to sue and be sued; . ."

> "Sec. 18. Governmental function. It is hereby declared that the purposes of this act are public and that the authority shall be regarded as performing a governmental function in the carrying out of the provisions of the act."

In *Nat. Bk., Boston* v. *Turnpike Authority*, 153 Me. 131, 136 A. (2nd) 699 (1957), in holding that an amendment to the Act providing payment for utility relocation on the Augusta extension was unconstitutional, we said, at p. 155:

> "It (the Maine Turnpike Authority) is 'a body both corporate and politic' and 'shall be regarded as performing a governmental function.'

> "The Authority 'in order to facilitate vehicular traffic between the southwestern and northeastern section of the state of Maine' 'for the benefit of the people of the state of Maine and for the improvement of their commerce and prosperity in which accomplishment the authority will be performing essential governmental functions' was authorized to construct, operate and maintain a turnpike, with the approval of the State Highway Commission, from Kittery to Fort Kent. Such authorization by the legislature was tantamount to 'a determination that the public exigency requires such road.' *Lynn & Boston Railroad Company v. Boston & Lowell Railroad Corporation*, 114 Mass. 88, 91. It had to be a limited access road from its very design and

purpose. Revenue bonds payable solely from tolls were sanctioned, for the cost of construction. Such bonds were not to be a debt of the state of Maine, nor could the faith or credit of the State be at all pledged in their behalf. The turnpike when paid for was to become the property of the State, to be operated thereafter by the State Highway Commission. The Authority was granted power to acquire, hold and dispose of personal property and to acquire 'by purchase, continuation, lease or otherwise, real property and rights or easements therein deemed by it necessary or desirable for its purposes and to use such property.' Right of eminent domain was accorded as to real property. The Authority was afforded immunity from levy, sale and lien except for the lien granted its bondholders upon its net receipts. Its property, income and the securities it might issue were exempted from all Maine taxes. The turnpike was made available at all times, without charge, to the armed services.

"The turnpike was manifestly to be a type of public highway and the Authority was, in its legislative conception, a governmental agency with police power plainly conferred."

In brief, the State established an instrumentality or agency to construct, operate and maintain a great highway, financed through tolls, and eventually to become a part of the state highway system.

The plaintiff, it is to be noted, contends not that the State itself is subject to tort liability, but that the immunity of the State does not extend to the Authority. *Jones Company* v. *State,* 122 Me. 214, 119 A. 577, involving negligence in the allowance of temporary liberty to a mental patient at a state hospital, is a typical case of a tort action against the State under the authority of a legislative Resolve. For an interesting summary of Maine law see Leflar & Krantowitz on "Tort Liability of the States," 29 N. Y. U. Law Rev. 1363, 1381 (1954).

The plaintiff maintains:

> "*1*. That the Maine Turnpike Authority is not such a State Agency as to be clothed with the State's immunity from suit or from liability for tort;

> "*2*. If the Authority is a State Agent to be so immune, then by virtue of Section 4-A of The Act, the State, by giving the Authority the power to sue or be sued, has waived such immunity."

and

> 3. That the doctrine of governmental immunity, either from suit or from liability, should not extend to a separate corporation organized by the State to perform a governmental function.

First — It was settled in *Nat. Bk., Boston* v. *Turnpike Authority, supra,* that the Authority is "a governmental agency with police power plainly conferred." The State has delegated to the Authority the carrying out of a "governmental function," namely, the construction, maintenance, and operation of a public highway. The Legislature could have placed the Turnpike within the state highway system under the control of the State Highway Commission. It chose, however, doubtless for financial reasons, to make use of an instrumentality or agency.

The plaintiff points to the *Opinion of the Justices,* 146 Me. 249, 80 A. (2nd) 417 (1951), in which all of the justices joined in advising the House that the Authority was not a State Department within the meaning of what is now Art. IX, Sec. 19, of our Constitution, prohibiting the expenditure of the gasoline tax unless "under the direction and supervision of a state department having jurisdiction over such highways and bridges. . . "

The advisory opinion was limited to the consideration of a proposed statute providing payments from the gasoline tax to the Authority in light of the constitutional provision

designed to prevent diversion of the tax. There is no suggestion that the status of the Authority as an instrumentality or agency of the State was under consideration, except with reference to the particular constitutional provision. The issue of immunity of the Authority from liability in tort was not even faintly before the justices.

The plaintiff would equate the Authority with a public utility operating for profit and created by Act of the Legislature. In our view, there are wide differences between the Authority and, let us say, the usual railroad operation. In the Turnpike there is no element of private profit. It is the State, and the State alone, that ultimately benefits from the operation of the Turnpike. Further, we do not ordinarily consider the operation of a railroad as a public or governmental function. Whether it may under some circumstances be so considered, is not an issue before us.

The plaintiff urges that many provisions of the Turnpike Act are inconsistent with the creation of the Authority as an Agency of the State. Attention is called to the provisions that the Authority may "make contracts with . . . the state of Maine or any of its agencies or instrumentalities, . ." (Sec. 4 (a) (9)), must reimburse the State Highway Commission (Sec. 3 (d)), cannot pledge the credit of the State (Sec. 2), takes title to property in the name of the Authority (Sec. 5 (b)), is not under supervision or regulation by any State Commission, Board, or Agency with reference to the tolls (Sec. 11 (d)), and may be placed in receivership for benefit of the bondholders (Sec. 12).

Such provisions do no more in our opinion than make clear that the governmental function of constructing, operating and maintaining the Turnpike is delegated to the Authority as an agency of the State. The Authority is a separate corporate entity from the State to be sure, but this does not deny that the State is the real party in interest in its activities.

The power to contract with the State or other agencies of the State may be of value to the Authority and to the other contracting parties. We know of no reason why the State should not secure the benefits from such action without destroying the agency of the Authority.

We hold that the Authority is immune from tort liability under the circumstances here disclosed, without at this time considering the possible loss of immunity by waiver. This view is in accord with the great weight of authority. See cases collected in Annot. 62 A. L. R. (2nd) 1222, 1224.

Second — We are convinced that the "sue and be sued" clause does not operate as a waiver of the immunity of the defendant from tort liability under the circumstances of the instant case. The great weight of authority is to this effect. Annot. 62 A. L. R. (2nd) 1232. See also *Spangler* v. *Florida State Turnpike Authority* (Fla.) 106 So. (2nd) 421 (1958).

The contrary view has been taken in Federal cases. In *Petty* v. *Tennessee-Missouri Bridge Commission,* 359 U. S. 275, 79 S. Ct. 785 (1959), for example, the Supreme Court held a waiver of immunity from a "sue and be sued" clause, although neither state in which the Bridge Commission was organized would have so ruled.

We do not think the Legislature in 1941, or any time since then, intended to broaden "sue and be sued" into authority to sue a state agency such as the defendant for negligence in maintenance of a highway.

In discussing this phase of the case, we must at all times take care to treat only of the situation at hand. We are not interested in liability or immunity from liability in other situations. For example, in the *Kennebunk et al. Water Dist.* v. *Maine Turnpike* cases, 145 Me. 35, 71 A. (2nd) 520 and 147 Me. 149, 84 A. (2nd) 433, the Water District sought damages resulting from a turbid condition of the water in Branch Brook, the water supply for certain towns, brought

about by the action of the Authority in constructing the Turnpike. Both cases turned on the pleadings. In the second case we said, at p. 162:

> "The declaration contains averments which, if true and established by evidence, would justify a recovery for damages actually suffered by the plaintiff, down to and including the date this action was commenced, because of the injury to the waters of Branch Brook as a source of public water supply."

The question of immunity from such liability was not raised. The court, without question, was of the view that the "sue and be sued" clause permitted an action of this type with recovery against the Agency or Authority. The situation was indeed analogous to that created by a taking in eminent domain. The case did not involve liability to the traveler for a defective highway, but liability for continuous damage and practical destruction of the water supply of a public utility.

The cases do not stand for the proposition that the State in the 1941 Act waived all sovereign immunity of the Authority against liability. They hold in substance that immunity from liability for torts in the nature of a nuisance was waived, and no more. The case of the traveler on the Turnpike skidding on a negligently maintained surface with resulting personal injuries as here was not before the court and was not expressly or impliedly ruled upon in the opinion. See *Topsham* v. *Lisbon,* 65 Me. 449; *Tuell* v. *Inhabitants of Marion,* 110 Me. 460, 86 A. 980; *Hope Natural Gas Co.* v. *West Virginia Turnpike Commission* (W. Va.), 105 S. E. (2nd) 630 (1959); Fuller and Casner, *Municipal Tort Liability in Operation,* 54 Harvard Law Rev. 437, 443 (1941).

The *Nat. Bk., Boston* v. *Turnpike* case, *supra,* as we have seen, goes to liability on contracts and to the constitutionality of an attempted change in the contract between the

Authority and the bondholders. The question of liability in tort was not before the court.

In *Taylor* v. *New Jersey Highway Authority,* 22 N. J. 454, 126 A. (2nd) 313, 62 A. L. R. (2nd) 1211, cited by the plaintiff, the court, in holding the Authority was liable in tort for personal injuries to a visitor of a tenant sustained from negligence in maintaining a common stairway in a multi-family dwelling house appropriated by eminent domain for highway purposes, said:

> "The New Jersey Highway Authority Act (NJSA 27:12B-1 et seq.) contains no language which speaks in terms of the immunity or its waiver but it does contain ample evidence of the legislative intent that the Authority shall be suable at least to some extent. Thus there is an express provision that the Authority shall have power 'to sue and be sued in its own name': and on many occasions the Authority has in fact sued and been sued." 62 A. L. R. (2nd) 1219.

The New Jersey court, however, expressly excluded from its opinion a situation such as that before us in saying, "Similarly there is no need in the instant matter to consider whether there was any legislative intent to waive the defendant's immunity against claims alleging the negligent maintenance of the public highway in disregard of its public duty; we shall assume, for present purposes, that within the doctrine of the Strader and Stephens cases that immunity continues." 62 A. L. R. (2nd) 1222.

The two *Kennebunk Water District* cases, *supra,* and the *Taylor* case, *supra,* are analogous. In neither Maine nor New Jersey did the court have before it the issue of liability to the traveler for negligent maintenance of the highway.

It is of interest and significance that in many instances liability in tort of a Turnpike Authority or Agency is established by statute, or, stated differently, that there is express

waiver of governmental immunity to a limited degree. Such statutes are some evidence of the view that immunity is retained in the absence of waiver expressly stated in the legislative act. Examples are:

*Massachusetts Turnpike Authority*

"Until the turnpike shall have became a part of the state highway system under the provisions of section seventeen of this act, the Authority shall be liable to any person sustaining bodily injury or damage in his property by reason of a defect or want of repair therein or thereupon to the same extent as though the turnpike were a way within the meaning of sections fifteen, eighteen and nineteen of chapter eighty-four of the General Laws, and shall be liable for the death of any person caused by such defect or want of repair to the same extent as is provided in chapter two hundred and twenty-nine of the General Laws. Any notice of such injury, damage or death required by law shall be given to any member of the Authority or to the secretary-treasurer." *Opinion of the Justices,* 330 Mass. 713, 113 N. E. (2nd) 452, 462 (1953) ; Massachusetts General Laws Annot. appendix to c. 81.

*New York State Thruway Authority*

*Easley* v. *New York State Thruway Auth.,* 153 N. Y. S. (2nd) 28 (1956).

See also summary New York law, 29 N. Y. P. Law Rev. 1391.

*Ohio Turnpike Commission*

*Hoffmeyer* v. *Ohio Turnpike Commission,* 166 N. E. (2nd) 543, 545 (1960).

"Coupled with these specific responsibilities are: 1) the general statement that it can 'sue and be sued in its own name. . . .' Ohio Revised Code Section 5537.04 (D) ; and more significantly, 2) the

admonition that though the activities shall be essential governmental functions, *'the commission shall not be immune from liability by reason thereof.'* Ohio Revised Code Section 5537.02."

## Nebraska Turnpike Authority

"The new Nebraska Turnpike Authority is apparently liable for its torts." Nebraska Rev. Stat. Ann. § 39-1235 (Cum. Supp. 1953) : 'The authority . . . may be sued by any person for damages for breach of contract or for injuries to his person or property. . . ' " 29 N. Y. U. Law Rev. 1388.

## Oklahoma Turnpike Authority

*Oklahoma Turnpike Authority* v. *Kitchen,* 337 P. (2nd) 1081, 1087 (1959).

"O.S. 1951 § 653, provides that the Turnpike Authority shall be liable for personal injuries or property damages caused by it through its negligence or the negligence of its servants."

In *Gerr* v. *Emrick,* 283 F. (2nd) 293 (1960), the United States Court of Appeals, Third Circuit, held that the Pennsylvania Turnpike Commission was liable in tort for negligent failure to maintain a guard rail. Without a state decision on the precise question, the Federal Court was forced "to make our own determination of what the Pennsylvania Supreme Court would probably rule in a similar case."

The Federal Court relied heavily upon *Lichtenstein* v. *Pa. Turnpike Com.,* 398 Pa. 415, 158 A. (2nd) 461 (1960), in which the Pennsylvania Court held the Commission was liable for interest on an award, although in like circumstances interest could not be charged to the Commonwealth, saying that the Act "which created the Turnpike Commission, constituted it 'an instrumentality of the Commonwealth,' performing 'an essential governmental function of the Commonwealth.' But, equally so is every legislatively

ordained municipal corporation, school district or political subdivision."

"It is also clear from what was decided and said in *Lichtenstein* that the Pennsylvania Turnpike Commission occupies the status of a 'legislatively ordained municipal corporation, school district or political subdivision' and as such is suable for negligence in the discharge of its legislatively assigned functions to construct, operate and maintain the Pennsylvania Turnpike. It is settled in Pennsylvania that municipalities or political subdivisions may be sued for negligent maintenance of their highways." *Gerr* v. *Emrick, supra,* at p. 296. The *Gerr* case does not, in our view, aid the plaintiff.

We are not prepared to say that the Maine Turnpike Authority does not differ in important respects from the usual Maine quasi-municipal corporation, such as a water district, or from a Maine town or municipal corporation. The Authority beyond question is carrying out a governmental function of a nature and size that only the State may reasonably be expected to conduct. No municipality or county could construct, operate and maintain a turnpike serving such an area. The Turnpike is a great highway of state-wide importance and concern.

There has been no showing here either of the liability of the Authority under a particular statute, or of acts or failure to act of a nature chargeable against any municipality or the State under any statute if committed, for example, on a state highway. In commenting upon the application of the *Gerr* case, we in no way intimate what our opinion would be under any circumstances other than those existing in the case at bar.

Third — The third question is whether the governmental immunity from liability for tort under the existing circumstances and presently applicable to the Authority should be

destroyed. The doctrine of immunity of such agencies of government, and indeed of government itself, has been subject to sharp criticism and attack in the past few years. 2 Harper & James, Torts (1956), § 29.1 *et seq.* with references to the earlier material; Prosser, Torts, c. 24 (2d ed. 1955); Davis on "Tort Liability of Governmental Units," 40 Minn. Law Rev. 751 (1956).

In *Molitor* v. *Kaneland Community Unit District No. 302,* 18 Ill. (2nd) 11, 163 N. E. (2nd) 89, the Illinois Court in 1959 broke with the past in holding a school district would be liable in tort to a pupil for personal injuries sustained when the school bus in which the pupil was riding left the road if the accident resulted from the driver's negligence. The court said, in departing from *stare decisis,* at p. 96: "We conclude that the rule of school district tort immunity is unjust, unsupported by any valid reason, and has no rightful place in modern society." The court noted that the immunity rule was judge-made and so could be judge-changed. Justice Davis, in a dissenting opinion, focused attention upon the policy making power of the Legislature and commented upon the reaction of the Legislature since *Molitor* in restoring, in part at least, tort immunity.

The California Court, in *Muskopf* v. *Corning Hospital District,* 11 Cal. Rptr. 89, 90 (1961), came to a like conclusion with the Illinois Court. The court said:

> "After a re-evaluation of the rule of governmental immunity from tort liability we have concluded that it must be discarded as mistaken and unjust."

Two justices in dissenting believed "that the question of abolishing governmental immunity is for the Legislature."

The problem is clearly set forth in the learned opinions of the Illinois and California Courts. The path, however, in our opinion is not plain to the conclusions reached by the majority of each court.

The policy of immunity from liability for tort under the circumstances before us has been so long established and so long acted upon that only the clearest and most convincing reasons should compel a reversal by our court. It cannot be questioned that Legislatures and the people of the State from 1820 have acted or refrained from acting in reliance upon sovereign immunity.

We may agree that the State or its agency, the Authority, ought to bear the plaintiff's loss under the circumstances set forth. We may agree that sovereign immunity from tort liability has served its usefulness and ought to be destroyed. These are reasons directed, in our opinion, to the determination of the policy of the State, and not to the construction of legislative acts in the process of ascertaining the intent of the Legislature.

The issue is not complex. Should sovereign immunity in tort, time tested in our State, be discarded or destroyed? This is a policy question which, in our opinion, is more properly directed to the Legislature than to the court. Federal Tort Claims Act of 1946, 28 U. S. C. A. §§ 2671-2680 is an outstanding example of waiver of immunity by legislative action. The demurrer was correctly sustained.

The entry will be

*Exceptions overruled.*