**Robert BARTASHEVICH**

v.

**CITY OF PORTLAND.**

Supreme Judicial Court of Maine.

July 31, 1973.

Henry N. Berry, III, Portland, for plaintiff.

Charles A. Lane, Portland, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

The plaintiff brought a direct action against the City of Portland (City) to recover damages for the tortious conduct of a member of the City police department. The plaintiff premised his complaint on several theories, namely, 1) "on a theory of respondeat superior"; 2) on the negligent failure "to act prudently in the selection, training and supervision of members of its police department to prevent foreseeable harm" to the plaintiff and, finally, that plaintiff is a third party beneficiary of "the contract of employment between the Defendant . . . and [the police officer] in that said [officer] was hired by the City to protect Plaintiff from being the victim of an assault and battery, false arrest, and/or malicious prosecution . . . ."

The City filed a motion to dismiss on dual grounds, namely:

1) "[T]he Complaint fails to state a claim against Defendant upon which relief can be granted."

2) "[A]t all relevant times the Defendant was acting in a governmental capacity, and therefore immune from liability."

After a hearing on this motion the Justice below tersely ruled: "Motion granted over objection of defendent [sic]." The plaintiff appealed, and we deny the appeal.

The action now before us is based on the identical facts which gave rise to the issues discussed in Bale v. Ryder and the City of Portland, 286 A.2d 344 (Me.1972). In *Bale* we concluded that "it would not be appropriate for us at this time to abrogate the existing rule of sovereign immunity by judicial fiat." Although we adhere to the carefully articulated reasoning of Mr. Justice Pomeroy in *Bale* critical of the doctrine, this case is hardly an appropriate one to use as a vehicle to abrogate it, prospectively or otherwise. The same circumstances that denied potential recovery to Mr. Bale should not be used to

support Mr. Bartashevich's claim for damage.

We note the continuing viability of the 106th Maine Legislature (now in adjournment but expected to reconvene in special session in January, 1974), a body which, as we said in *Bale*, "has the power, the capacity and the administrative machinery for conducting investigations and for giving consideration to several plans which could be advanced to solve the problem with relatively minor impact upon the municipal treasury." The Legislature should, *by now*, be well aware of our disaffection with the sovereign immunity rule as a rational legal concept.[1] However, we still believe that a reasonable time should pass in which legislative thought may crystalize on the best methods of resolving the problems which may face municipalities with the abolition of the doctrine before we consider whether, absent some affirmative legislative action, we should assume the responsibility of abrogating this court made legal rule.

■ Clearly, the routine operation of a police department is a governmental function as opposed to a proprietary activity[2] and, therefore, the negligence of a police officer in making an on duty arrest does not expose the municipality to liability because of the sovereign immunity doctrine. Thus, the first count in the plaintiff's complaint premised "on a theory of respondeat superior" cannot be maintained.

■ Can the plaintiff predicate his action upon an alleged independent tort committed by the City? This issue was not dealt with in *Bale*.

The plaintiff seeks support in two Maine cases, Woodcock v. City of Calais, 66 Me. 234 (1877), and Michaud v. City of Bangor, 159 Me. 491, 196 A.2d 106 (1963). These cases are distinguishable.

*Woodcock* recognized the sovereign immunity rule and acknowleded that the acts of a municipal employee (street commissioner) performed within the scope of his lawful authority would not expose the City to liability. However, the trespassory act there complained of exceeded this authority and, being done by express direction of the city government, the city became liable. In other words, when the city government specifically ordered its street commissioner to commit a trespass, the city became liable therefor.

In *Michaud*, the Bangor City Council formally voted "to do an illegal act, which act was executed by the city building inspector and the city fire department" and the resulting demolition of the plaintiff's property by the city employees was not "within the scope of their duties as public officers in their respective capacities." The holding in *Michaud* imposed tort liability upon the city when it specifically authorized an illegal act to be done by its employees, in which case they acted not as public officers but as special agents.

More appropriate to the facts before us, although by analogy, is Rhoda v. Aroostook General Hospital, 226 A.2d 530 (Me. 1967), an action premised on the negligent failure of the defendant charity "to properly select qualified employers, to properly train its employees, and to adequately supervise and control its employees." Although speaking in terms of charitable immunity and the rationale underlying that doctrine, and recognizing that if it was to be abolished the Legislature "as the ultimate policy maker in the State" should do so, the *Rhoda* Court used this language:

"There is no sound distinction in reason to help support a different rule regard-

---

1. "This Court in Nelson v. Maine Turnpike Authority, 157 Me. 174, 170 A.2d 687 (1961), acknowledged that the doctrine has been 'subject to sharp criticism and attack in the past few years.'

"And well it should!" Bale v. Ryder, 286 A.2d 344, 345.

2. cf. Blier v. Inhabitants of Town of Fort Kent, 273 A.2d 732 (Me.1971).

ing the liability of a charitable institution for the negligence of its servants and agents and its liability for the carelessness on the part of its governing body. There is equally no sound ground for distinction between exoneration or immunity from liability for the negligence of the ordinary servants of the charity and that of corporate officers, sometimes termed corporate negligence, including negligence in selecting, training, supervising, controlling or retaining employees. . . ."

*Id.* at 532.

This language has complete applicability to the issue before us and precludes recovery on the theory of an independent tort by the municipal officers.

Finally, plaintiff argues that he is entitled to proceed *against the City* because, as a member of the public, he is the third party beneficiary of an employment contract between the City and the police officer under which the officer was "hired by the City to protect plaintiff from being the victim of an assault and battery, false arrest, and/or malicious prosecution." Mr. Bartashevich misconceives his position.

"§ 133. DEFINITION OF DONEE BENEFICIARY, CREDITOR BENEFICIARY, INCIDENTAL BENEFICIARY.

(1) Where performance of a promise in a contract will benefit a person other than the promisee, that person is, except as stated in Subsection (3):

(a) a donee beneficiary if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary;"

Restatement of Contracts, § 133(1)(a).

Restatement of Contracts, § 145 provides:

"§ 145. BENEFICIARIES UNDER PROMISES TO THE UNITED STATES, A STATE, OR A MUNICIPALITY.

A Promisor bound to the United States or to a State or municipality by contract to do an act or render a service to some or all of the members of the public, is subject to no duty under the contract to such members to give compensation for the injurious consequences of performing or attempting to perform it, or of failing to do so, unless,

(a) an intention is manifested in the contract, as interpreted in the light of the circumstances surrounding its formation, that the promisor shall compensate members of the public for such injurious consequences . . . .

*Comment*:

a. Clause (a) is a special application of the principles stated in § . . . 133(1a) . . . ."

There is ample authority recognizing the right of an inhabitant to maintain an action *against a promisor* on a contract made with a municipality for the benefit of its citizens.

"Of course, in the states which have adopted the doctrine that an action may be maintained on a contract by one who was not a party to it if it was made for his benefit, there is no difficulty in applying the doctrine when the contract was made for the benefit of the public."

56 Am.Jur.2d, Municipal Corporations, Counties and other Political Subdivisions, § 500 at 550. Maine has recognized the right of a third party, beneficially interested in a contract although not a party to it, to maintain an action for its breach against the promisor. Frothingham v. Maxim, 127 Me. 58, 141 A. 99 (1928); Forbes v. Wells Beach Casino, Inc., 307 A. 2d 210 (Me.1973). In *Forbes* the plain-

tiff was the third party beneficiary of a contract executed between the defendant Loew and one Laskey, each of whom, the opinion recites, was "both promisor and promisee" and the right of Forbes to seek performance against defendant Loew was recognized.

However, as suggested by both Sections 133(1)(a) and 145 of the Restatement of Contracts, *supra*, the action by the third party beneficiary lies against the promisor and no cases have been cited to us, nor have we found any, that recognize the right of a third party beneficiary to proceed directly against the municipality (promisee) in such cases. Clearly, Section 145 does not purport to authorize an action against a municipality by the third party beneficiary under a contract between the municipality and another person. Rather, it presupposes that the action can be maintained against the promisor if the conditions stated in (a) exist.

The only case cited in support of the plaintiff's position is LaMourea v. Rhude, 209 Minn. 53, 295 N.W. 304 (1940). Rather than lending support to the plaintiff, it is authority only for the proposition that an action could be maintained against Rhude (the "promisor"), who was obligated under an indemnity contract with the City of Duluth making him "liable for any damages done to . . . public or private property and injuries sustained by persons" from blasting in the performance of his construction contract. This holding is consistent with the Restatement of Contracts, § 145, *supra*, and lends no support for the plaintiff's argument.

Applying these rules to the plaintiff's third party beneficiary argument, the "promisor" in the alleged contract with the City was the police officer, *not the City*, and it is obvious that the plaintiff is without legal support for his position.

The entry is:

Appeal denied.

All Justices concurring.