**Edith A. DAVIES**

v.

**CITY OF BATH.**

Supreme Judicial Court of Maine.

Oct. 12, 1976.

As Amended Nov. 30, 1976.

See also Me., 364 A.2d 1274, Me., 364 A.2d 1275.

Carl O. Bradford, H. Denton Bumgardner, Freeport, for plaintiff.

Hart & Stinson, P. A. by Carl W. Stinson, Bath, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE,* POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

This is an appeal from granting defendant's motion for summary judgment. We sustain the appeal and remand for further proceeding.

The parties agreed that the plaintiff is the owner of real property in the City of Bath, that the defendant municipality owns and legally operates a public sewerage system. It was further agreed that a sewer main ran under the northeasterly corner of the plaintiff's house and on December 13, 1973, water from that main erupted through the basement of the house causing substantial damage. The plaintiff, not being able to maintain an action under 30 M.R.S.A. § 4353 [1] because she had not paid

---

* Mr. Justice Weatherbee sat at argument and participated in consultation but died prior to preparation of opinion.

1. "After a public drain has been constructed and any person has paid for connecting with it, it shall be constantly maintained and kept in repair by the town so as to afford sufficient and suitable flow for all drainage entitled to pass through it; but its course may be altered or other sufficient and suitable drains may be substituted therefor. If such town does not so maintain and keep it in repair, any person entitled to drainage through it may have an action against the town for his damages thereby sustained."

for connecting with the public drain, premised her cause of action on defendant's negligent maintenance of the sewer main. Although the negligence was denied, the Justice below granted the motion for summary judgment in favor of the defendant, holding that "the doctrine of municipal immunity is a complete defense to this action."

Once again we must consider the viability of the doctrine of governmental immunity.

In recent years we have expressed our displeasure with this rule and the substantial injustices which result from it, and have said:

"We may agree that sovereign immunity from tort liability has served its usefulness and ought to be destroyed."

*Nelson v. Maine Turnpike Authority,* 157 Me. 174, 186, 170 A.2d 687, 693 (1961).

However, the Court in *Nelson* declined to abrogate the rule because complex issues of State policy were involved which were more appropriately left to the discretion of the Legislature.

In *Bale v. Ryder,* 286 A.2d 344, 345 (Me. 1972), we carefully traced the supposed origins of the doctrine and concluded that

"application of the so-called doctrine has been incorrect and its application cannot withstand the test of logic."

*See also Jivelekas v. City of Worland,* 546 P.2d 419 (Wyo.1976).

Despite our clear repudiation of the rule in *Bale,* we once again refused to impose tort liability on a municipality because:

"We do not hold the purse strings. We have no power to levy taxes or otherwise provide funds to meet liability which would result from a decision abrogating the immunity doctrine. The Legislature has the power, the capacity and the administrative machinery for conducting investigations and for giving consideration to several plans which could be advanced to solve the problem with relatively minor impact upon the municipal treasury."

*Bale v. Ryder,* 286 A.2d at 348.

Our decision in *Bale* was certified on January 21, 1972, three days before the 105th Maine Legislature met in special session. No attempt was made to address the problems created by the doctrine of governmental immunity during the 1972 special session, nor did the regular session of the 106th Maine Legislature [2] take any action.

On July 31, 1973, we certified our decision in *Bartashevich v. City of Portland,* 308 A.2d 551 (Me.1973), in which we once again refused to impose tort liability on a municipality because

"we still believe[d] that a reasonable time should pass in which legislative thought [could] crystalize on the best methods of resolving the problems which may face municipalities with the abolition of the doctrine before we consider whether, absent some affirmative action, we should assume the responsibility of abrogating this court made legal rule." 308 A.2d at 552.

The 106th Maine Legislature failed to take any action during its 1974 special session.[3] In 1975 the 107th Maine Legislature considered L.D. 1568 (H.P. 1297) which would have repealed and replaced 14 M.R.S.A. § 157 relating to tort liability of governmental agencies. The proposed bill would have imposed liability for actions

---

2. The session ran from January 3, 1973, to July 4, 1973.

3. January 2 to March 29, 1974.

against the State arising out of the use, ownership, or operation of a motor vehicle up to $100,000, or to the extent of insurance coverage if it exceeded $100,000, and it would have imposed liability on all governmental units for any tortious conduct *to the extent of insurance coverage. The proposed statute would also have affirmed the doctrine of governmental immunity except as expressly modified by statute.* A majority of the committee on Judiciary reported that the bill "Ought to Pass," but the Senate accepted the minority "Ought Not to Pass" report.[4] The Legislature failed to take any further action during its special sessions in 1976.

If the Legislature had enacted L.D. 1568 in 1975, we would accede to the clear affirmation of governmental immunity and would continue its application as modified by statute. Although we may question the efficacy of a policy that allows a municipality to determine the extent of its own liability, it is not our duty to judge the wisdom of legislative enactments. *Shapiro Bros. Shoe Co., Inc. v. Lewiston-Auburn S.P.A.,* 320 A.2d 247, 257 (Me.1974).

Although the Legislature failed to adopt the common law rule of governmental immunity in 1975, we must determine whether the prior enactment of various exceptions to the doctrine and of special bills waiving State immunity in individual cases has transformed governmental immunity from a court-made rule[5] to a legislative policy.

The Legislature has enacted a number of provisions which waive or abolish govern-

mental immunity in certain specified cases. 14 M.R.S.A. § 157 abolishes immunity to the extent of insurance coverage in all civil actions arising out of the use, ownership or operation of a motor vehicle against the State, a political subdivision or a quasi-municipal corporation. While it is arguable that the enactment of such a statute evidences a legislative intent to adopt the judicial doctrine of governmental immunity,[6] we recognized in *Blier v. Inhabitants of Town of Fort Kent,* 273 A.2d 732, 737 (Me.1971), that

"the true sense of the law of the enactment as a whole was solely to *curtail* the judicial doctrine and to *cut down* the defense of governmental immunity to the extent of insurance coverage in tort claims arising out of the operation of motor vehicles . . .." (Emphasis supplied.)

Likewise, other statutes which allow actions against the State or against municipalities were enacted in the face of the *judicial* doctrine of governmental immunity and were intended to curtail the doctrine's harsh effects rather than to affirm it for all other tortious conduct. *See e. g.,* 23 M.R.S.A. §§ 3655–58 (dealing with the liability of counties and municipalities for damage caused by defects in any highway, townway, causeway or bridge); 23 M.R.S.A. § 1451 (dealing with the liability of the State to towns and counties for judgments recovered against them as a result of defects in state and state aid highways to the improvement of which the State has contributed). Particularly appropriate to the present case is 30 M.R.S.A. § 4353 (see

---

4. It is not clear to us, after reading the debate on the floor of the Senate, why the bill was defeated. Two senators spoke in opposition. One expressed concern about the $100,-000, minimum liability in motor vehicle cases against the State and suggested that the entire matter required further study. The other recognized that the proposed bill would do little to correct the injustices which we decried in *Bale* and *Bartashevich.*

5. *See Bale v. Ryder,* 286 A.2d 344 (Me. 1972), for the conventional theories on the manner in which governmental immunity became a part of the common law.

6. *See Rhoda v. Aroostook General Hospital,* 226 A.2d 530 (Me.1967).

n. 1, *supra*), which imposes liability on a town for damages caused to a person who has paid for connecting with a public drain. The defendant argues that the Legislature intended to "limit" municipal liability for damage arising from drains to only those people who have paid for connection. However, the public drain statute was enacted in order to ameliorate the harsh effects (as was the case in *Blier*) of the application of the doctrine of governmental immunity and cannot be held to affirm the doctrine in any sense. Justice Traynor disposed of the same argument on the occasion of the abolition of governmental immunity in California:

"We are not here faced with a situation in which the Legislature has adopted an established judicial interpretation by repeated re-enactment of a statute. . . . Nor are we faced with a comprehensive legislative enactment designed to cover a field. What is before us is a series of sporadic statutes, each operating on a separate area of governmental immunity where its evil was felt most. Defendant would have us say that because the Legislature has removed governmental immunity in these areas we

are powerless to remove it in others. We read the statutes as meaning only what they say: that in the areas indicated there shall be no governmental immunity. They leave to the court whether it should adhere to its own rule of immunity in other areas."

*Muskopf v. Corning Hospital District,* 55 Cal.2d 211, 11 Cal.Rptr. 89, 93, 359 P.2d 457, 461 (1961).

The legislature in Maine has also traditionally passed resolves which allow tort actions to be brought against the State. These resolves normally are limited to specified individuals for specific actions and generally set a maximum level of recovery.[7] Again, these enactments are intended to *limit* the *judicial* doctrine of governmental immunity and they cannot be viewed as legislative affirmation of it. *Blier v. Inhabitants of the Town of Fort Kent, supra.*

■ No purpose would be served here by restating our reasons for holding that governmental immunity is no longer a rational judicial doctrine. *See Bale v. Ryder, supra.* Throughout the United States, the doctrine has been so discredited that an overwhelming majority of jurisdictions has abolished it either by judicial decision[8] or

7. The 107th Maine Legislature, for example, passed six such resolves in 1975. Resolves, 1975, ch. 7, ch. 9, ch. 12, ch. 14, ch. 17, and ch. 19.

8. *See Spencer v. General Hospital of District of Columbia,* 138 U.S.App.D.C. 48, 425 F.2d 479 (1969); *Long v. City of Weirton,* 214 S.E.2d 832 (W.Va.1975); *Hicks v. State,* 88 N.M. 588, 544 P.2d 1153 (1975); *Jackson v. City of Florence,* 294 Ala. 592, 320 So.2d 68 (1975); *Kitto v. Minot Park District,* 224 N.W.2d 795 (N.D.1974); *Merrill v. City of Manchester,* 332 A.2d 378 (N.H.1975); *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973); *Evans v. Board of County Com'rs of County of El Paso,* 174 Colo. 97, 482 P.2d 968 (1971); *Willis v. Department of Conservation and Econ. Dev.,* 55 N.J. 534, 264 A.2d 34 (1970); *Becker v. Beaudoin,* 106 R.I. 562, 261 A.2d 896 (1970); *Smith v.*

*State,* 93 Idaho 795, 473 P.2d 937 (1970); *Parish v. Pitts,* 244 Ark. 1239, 429 S.W.2d 45 (1968); *Brown v. City of Omaha,* 183 Neb. 430, 160 N.W.2d 805 (1968); *Veach v. City of Phoenix,* 102 Ariz. 195, 427 P.2d 335 (1967); *Sherbutte v. Marine City,* 374 Mich. 48, 130 N.W.2d 920 (1964); *Haney v. City of Lexington,* 386 S.W.2d 738 (Ky. 1964); *Scheele v. City of Anchorage,* 385 P.2d 582 (Alaska 1963); *Rice v. Clark County,* 79 Nev. 253, 382 P.2d 605 (1963); *Holytz v. City of Milwaukee,* 17 Wis.2d 26, 115 N.W.2d 618 (1962); *Spanel v. Mounds View School District No. 621,* 264 Minn. 279, 118 N.W.2d 795 (1962); *Muskopf v. Corning Hospital District,* 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 (1961); *Molitor v. Kaneland Community Unit District No. 302,* 18 Ill.2d 11, 163 N.E.2d 89 (1959); *Hargrove v. Town of Cocoa Beach,* 96 So. 2d 130 (Fla.1957).

by statute. When the conditions of society change to such an extent that past judicial doctrines no longer fulfill the needs of a just and efficient system of law, we should not be bound by the constraints of *stare decisis*. As we noted in *Moulton v. Moulton,* 309 A.2d 224, 228 (Me.1973),

> "'stare decisis' will ultimately become a self-defeating principle if, in functioning to achieve stability in the law, it operates so inflexibly as to deny to judges the power to move ahead amidst the onrushing currents of change in the present when, in standing still restrained by the bonds of the past, they must fall behind into a cultural lag of unfairness and injustice."

We will no longer dismiss actions in tort brought against the State or its political subdivisions solely on the basis of governmental immunity.[9]

We are aware that an unconditional abolition of governmental immunity would create an undue burden for the State and for municipalities. Undoubtedly there are many causes of action which have arisen in the past which are not now barred by the statute of limitations, and we are aware of several pending actions which are awaiting the outcome of this case. The doctrine of governmental immunity has been applied since the inception of statehood in Maine and government agencies were entitled to rely on its continued application. The normal practice in cases such as this in which we make a departure from the rules of the past is to limit the applicability of the decision to causes of action arising after a certain date and to grant relief to the instant parties. *See Jones v. Billings,* 289 A.2d 39 (Me.1972).

While we recognize that an injustice is suffered at the hands of the judiciary by *any* party whose cause of action against a governmental agency is dismissed *solely* on the grounds of sovereign immunity, we must, nevertheless, attempt to balance that injustice against that which would be suffered by the taxpaying citizenry generally if the repeal of the doctrine were given full retrospective application.

In *Bale v. Ryder, supra,* although we were critical of the doctrine, we stated clearly that the Legislature was the appropriate forum for the resolution of such crucial policy issues. After that decision the State and municipalities would have been justified in believing that the judicial doctrine would continue to protect them from liability until the Legislature saw fit to enact a comprehensive and orderly statutory scheme. If, for example, we were to apply our decision retroactively to the date of *Bale,* we would unfairly impose liability on governmental units that were unprepared to meet the high costs of tort damages.

We said in *Bartashevich v. City of Portland,* 308 A.2d at 552:

> "The Legislature should, *by now,* be well aware of our disaffection with the sovereign immunity rule as a rational legal concept."

Although we failed to grant relief to the plaintiff in *Bartashevich,* we made clear that governmental immunity, as a judicial doctrine, could no longer be logically defended. We felt it was appropriate to give the Legislature sufficient time to devise procedures for a smooth transition and to formulate a legislative policy, but from the date of the *Bartashevich* decision, governmental units were required to look *to the Legislature* for any relief from liability in tort. Had the Legislature enacted a comprehensive statute, as it had an absolute right to do, or even if it had simply legis-

---

9. Although we recognize that the doctrines of sovereign immunity and municipal immunity appeared in the common law at different times and for different reasons, the injustices occasioned by both doctrines are identical and we treat them alike. We are not bound, as are some jurisdictions, by a constitutional provision which requires sovereign immunity. *See Kitto v. Minot Park District,* 224 N.W. 2d 795 (N.D.1974).

latively adopted the doctrine of governmental immunity, then we would have continued to grant immunity in deference to it until the effective date of the legislation. As we have previously noted herein, the 1975 Legislature failed to enact L.D. 1568 (H.P. 1297). Interested governmental agencies could have understandably concluded that they were privileged to defer protective action thereafter on the assumption that further legislative study would be required to resolve the problem (*see* n. 4, *supra*).

We find ourselves now in a legislative *vacuum*, and we are asked to use our judicial machinery to continue the application of a rule which we can no longer rationally defend. We have no way of determining what steps, if any, have been taken by State agencies and municipalities to prepare themselves for the possible imposition of tort liability and it is as reasonable to assume, in view of recent history, that no steps have been taken as it is to assume the contrary. Faced with this dilemma, we have sought to reach an equitable balance between competing interests of those unknown numbers of persons with potential damage claims against governmental units and the taxpayers who ultimately will be required to pay these claims when the defense of sovereign immunity is abrogated.

We have concluded that an impartial adjustment of these conflicting interests is best resolved by applying this decision to this particular plaintiff and to those causes of action arising on or after February 1, 1977.

The entry is:

Appeal sustained. Case remanded for further proceedings.

All Justices concurring.

DELAHANTY, J., did not sit.