STATE OF MAINE
Androscoggin, ss.

RECEIVED & FILED

NOV 04 2002

ANDROSCOGGIN
SUPERIOR COURT

SUPERIOR COURT
Civil Action
Docket No. CV-02-134
TCD-/ʻ ⁱ ⁱ ⁱ· ||/· ˑ ⁱˑᵒ

RANDY PARENTEAU, Personal
Representative of the Estate of
LEANNE CAISSE,
                    Plaintiff

v.

YORK COUNTY,
                    Defendant

**DECISION AND ORDER
ON DEFENDANT'S
MOTION TO DISMISS**

DONALD L. GARBRECHT
LAW LIBRARY

NOV 6 2002

## I. BACKGROUND

Randy Parenteau is the personal representative of the Estate of Leanne Caissie. He

brings this action against York County for the wrongful death of Caissie.

Dawn Welch, who is not a party to this action, was subject to house arrest during the

Spring of 2001. Prior to being released on the home-release monitoring program, Welch was

incarcerated for multiple offenses for operating a motor vehicle while under the influence of

alcohol. At all times during her house arrest, the York County Sheriff's Department ("county"

or "sheriff") was responsible for monitoring Welch. 30-A M.R.S.A. § 1659 (Supp. 2001). On or

about May 28, 2001, Welch had departed her home on a motorcycle with Caissie as a passenger.

Welch hit a curb and a utility pole and Caissie was thrown from the bike, sustaining serious and

ultimately fatal injuries. Welch had consumed alcohol at the time, in violation of her house

arrest.

It is unclear from the complaint, but at some point the agency that was responsible for

monitoring Welch via her electronic ankle bracelet notified the sheriff of the security breach

(identified in the complaint as "sometime shortly before Welch and Caissie collided with the

pole"). Parenteau alleges the personnel assigned to take the call neglected to detain Welch in a

timely fashion, in breach of the duty owed to plaintiff's decedent. As a direct and proximate result of the breach of duty, the sheriff did not timely notify and dispatch deputies to intercept Welch before she harmed anyone and, ultimately her actions and the inactions of the sheriff, resulted in the untimely death of Caissie.

Parenteau further argues that the sheriff's failure to incorporate a written protocol for personnel to follow when faced with a situation such as the "escape" of Welch from her area of legal confinement constitutes neglect. He claims that the sheriff's personnel knew or had reason to know of the dangers in permitting a habitual offender to leave her legal confinement zone.

Plaintiff claims that the wrongful acts, neglect, or default of York County would have entitled, if death had not ensued, Caissie to maintain an action and recover damages. The Estate has suffered pecuniary injuries resulting from Caissie's death and thus requests appropriate damages.

## II. MOTION TO DISMISS

In response to the claim, the defendant has moved to dismiss pursuant to M.R. Civ. P. 12(b)(6). The essence of the motion is that the defendant is a governmental unit that enjoys the protection of governmental or sovereign immunity for the acts alleged and that they do not fall within any of the enumerated exceptions to the Maine Tort Claims Act. 14 M.R.S.A. § 8104-A.

## III. DISCUSSION

A Motion to Dismiss under M.R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *Seacoast Hangar Condominium II Assoc. v. Martel*, 2001 ME 112, ¶ 16, 775 A.2d 1166, 1171. A complaint that fails "to state a claim upon which relief can be granted," must be dismissed. M.R. Civ. P. 12(b)(6). The court must presume the facts as set out in the complaint and draw all inferences as may be reasonable in a light most favorable to the plaintiff. *Herber v.*

2

*Lucerne-in-Maine Village Corp.*, 2000 ME 137, ¶ 7, 755 A.2d 1064, 1066. The plaintiff may prevail through a showing that the pleadings raise some factual issue that entitles the plaintiff to relief and denying in argument any facts asserted by the moving party that are not indicated in the complaint. *Id.*

Because the county is a "governmental entity," the Maine Tort Claims Act (MTCA) governs this action. 14 M.R.S.A. §§ 8101-8118 (Supp. 2001). The MTCA provides blanket immunity to governmental entities, which include by definition, counties. 14 M.R.S.A. § 8102(2), (3) (Supp. 2001). The MTCA provides four exceptions to general immunity, including liability for damage to property, bodily damage, or death. 14 M.R.S.A. § 8104-A. Governmental entities are exempt from (1) the negligent maintenance or use of vehicles;[1] (2) the negligent acts or omissions in the construction, operation or maintenance of any public building, or the appurtenances to any public building, not including discretionary function;[2] (3) the negligent acts or omissions relating to the discharge of pollutants into or upon the land, the atmosphere, or any water course or body of water, but only to the extent that the discharge is "sudden" and "accidental;" and (4) the negligent acts of omission arising out of the performance of road construction, street cleaning, or repair. *Id.* § 8104-A(1)-(4).[3]

Immunity may be waived if the governmental agency obtains insurance providing coverage in areas where the entity normally enjoys immunity. *City of Old Town v. Dimoulas*, 2002 ME 133, ¶ 25, 803 A.2d 1018, 1025. However, the Law Court, has held that if the policy is limited to coverage for "those areas for which governmental immunity has been expressly

---

[1] "Vehicles" include machinery and equipment of any motor vehicle, special mobile equipment, trailers, aircraft, watercraft, snowmobiles, or other machinery. 14 M.R.S.A. § 8104-A(1)(A)-(G).

[2] The governmental entity is also liable for the maintenance and use of a building whether acquired through tax sale or eminent domain. *Id.* § 8104-A(2)(B), (C).

[3] Only the first exception is applicable to this case.

3

waived pursuant to specified provisions, and also provided that '[l]iability coverage shall not be deemed a waiver of any immunities or limitation of damages available under the Maine Tort Claim Act, or other Maine statutory law, judicial precedent or common law.'" *City of Old Town v. Dimoulas*, 2002 ME 133, ¶ 25, 803 A.2d 1018, 1025 (citing *Doucette v. City of Lewiston*, 1997 ME 157, ¶¶ 8-10, 697 A.2d 1292, 1294); *see also* 14 M.R.S.A. § 8116. Compared to the policy approved by the Law Court in *Doucette*, the language in the county's policy is *verbatim*.

The county argues that Parenteau's claims do not fall within any of the enumerated exceptions to immunity under the MTCA. It is correct. The Law Court routinely interprets the immunity exceptions under the MTCA narrowly; and thus, the exceptions may not be broadened to include the type of harm alleged in the instant case.

The Law Court recently issued a decision that demonstrated its commitment, narrowly construing § 8104-A. In *Thompson v. Dep't of Inland Fisheries & Wildlife*, 2002 ME 78, 796 A.2d 674, the plaintiff, a recreational snowmobiler required medical evacuation via helicopter from a trail maintained by the Department of Inland Fisheries and Wildlife. *Id.* ¶ 1, 796 A.2d at 674. Thompson claimed the State failed to sufficiently fuel a helicopter and maintain adequate communication and navigation equipment. *Id.* ¶ 2, 796 A.2d at 675. As such, he argued, the State was liable for negligence, falling "squarely" within the plain meaning of "ownership, maintenance or use" of vehicles." *Id.* ¶ 5, 796 A.2d 676; *see also* 14 M.R.S.A. § 8104-A(1).

The Law Court upheld the dismissal by the Superior Court *Id.* ¶ 9, 796 A.2d at 677. The Court stated that "[i]n interpreting section 8104A(1), therefore, the focus is on the risk of harm naturally or directly caused by the vehicle's contact with the general public." *Id.* ¶ 7, 796 A.2d at 677. As with prior claims of negligence under subsection A(1), the Law Court found that the claim for injury lay not in contact with a negligently operated or maintained vehicle, but the

4

State's failure to execute an efficient rescue. *Id.* ¶ 9, 796 A.2d at 677; *see also Brooks v. Augusta Mental Health Inst.*, 606 A.2d 789, 791 (Me. 1992) (finding § 8104-A inapplicable to AMHI from the death of a patient who jumped from a moving bus to her death. The Court upheld the dismissal as proper because the injury suffered did not arise from "direct" or "natural" contact with the vehicle).

The Law Court has maintained this tenor of strict constructionism with respect to a narrow construction with respect to all of the exceptions to immunity. 14 M.R.S.A. § 8101-A(2); *see, e.g., ABT&A Co., Inc. v. State*, 644 A.2d 460 (Me. 1994) (holding that the "public buildings exception" does not extend to the care and supervision of individuals housed in such facilities); *Jensen v. Augusta Mental Health Inst.*, 574 A.2d 885, 886 (Me. 1990); *Darling v. Augusta Mental Health Inst.*, 535 A.2d 421, 424 (Me. 1987); *see, e.g., Dubail v. Dep't of Transp.*, 1998 ME 126, ¶¶ 7, 8, 711 A.2d 1301, 1303 (despite annual Department of Transportation street cleanings, the fact that a pedestrian fell did not mean, as a matter of law, he fell "during performance of street cleaning" exception to governmental immunity).

Parenteau argues this case falls under the first exception to government entity liability, the negligent maintenance or use of vehicles, which includes "equipment." Parenteau avers the ankle bracelet worn by Welch constitutes "equipment," as conceived by the statute, and that its purpose was "to prevent Dawn Welch from driving," stating that the "reasonable and laudable" goal of preventing Welch, a habitual drunk driver, was undermined by the sheriff's failure to respond promptly. Parenteau argues that the county "misused" its equipment in a negligent fashion and should not be afforded the immunity under § 8104-A. This argument is misplaced. Plaintiff's claim arises out of the sheriff's failure to answer the alarm and to timely respond, not

5

because Welch was wearing an electronic bracelet when she left the confines of electronic custody.

Considering the Law Court's long-standing proclivity to a strict construction of § 8104-A, Parenteau's fails. In order to reach Parenteau's conclusion, the court must first recognize the ankle bracelet as "equipment" for purposes of § 8104-A(1). Next, the court must determine that "the risk of harm [was] naturally or directly caused by the vehicle's contact with the general public." However, like the plaintiff in *Thompson*, the gravamen of Parenteau's complaint is that the injury resulted from the sheriff's failure to respond in a timely fashion, not as a result of contact with negligently operated or maintained equipment. *Thompson v. Dep't of Inland Fisheries & Wildlife*, 2002 ME 78, ¶ 9, 796 A.2d 674, 677; *Brooks v. Augusta Mental Health Inst.*, 606 A.2d 789, 791 (Me. 1992).

The exceptions to the MTCA must be strictly construed in keeping with the Law Court's clear precedence on the matter. Nevertheless, the county proffers an alternative argument that if immunity does not otherwise apply, it should be reinstated by operation of law under title 14 M.R.S.A. § 8104-B.

The county urges the court that the care and management of prisoners is not a "basic function" but a discretionary function" for which it maintains immunity under the MTCA. The legislature likely would agree: In 1997, it absolved sheriffs and jail keepers of liability for the escape of prisoners when it repealed title 30-A M.R.S.A. § 1508 (Supp. 2001). Whether an act constitutes a "discretionary governmental action" depends on whether it meets the following formula:

> (1) Does the challenged act, omission, or decision necessarily involve a basic
> governmental policy, program or objective? (2) Is the questioned act, omission,
> or decision essential to the realization or accomplishment of that policy, program,
> or objective as opposed to one which would not change the course or direction of

6

the policy, program, or objective? (3) Does the act omission or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Adriance v. Town of Standish*, 687 A.2d 238, 240 (Me. 1996) (quoting *Darling v. Augusta Mental Health Inst.*, 535 A.2d 421, 426 (Me. 1987).

In the instant case, applying the *Adriance* test, do the actions of the sheriff constitute a "discretionary function?" Clearly, the sheriff possesses the requisite statutory and lawful authority to release inmates through the home-monitoring program. 30-A M.R.S.A. § 1659. The Law Court has previously held "the management and care of prisoners is a discretionary function." *See, e.g., Erskine v. Commish Corrections*, 682 A.2d 681, 686 (Me. 1996); *Darling v. Augusta Mental Health Inst.*, 535 A.2d at 426; *Miller v. Szelenyi*, 546 A.2d 1013, 1021 (Me. 1988); *see also Ellis v. Meade*, 887 F.Supp. 324, 331 (D.Me. 1995).

With respect to Parenteau's argument that the failure of the sheriff to establish a written protocol for personnel to follow when faced with a situation such as the "escape" of an inmate on a home-release monitoring program, the Law Court has further found the effect of police department policies to also be discretionary. *See, e.g., Doucette v. City of Lewiston*, 1997 ME 157, ¶ 6, 697 A.2d 1292, 1294. The ability of the sheriff to authorize the release of inmates and the sheriffs' deputies to monitor inmates on release electronically is a discretionary function.

The court recognizes that the dismissal of this action seemingly imposes an unjust result to the plaintiff and perhaps leaves him without any other remedy for the death of Leanne Caissie, notwithstanding the substantial difficulties of proving negligent acts or abuse of discretion by the sheriff. Nevertheless, sovereign immunity is well established even though it was often

7

criticized[4] and eventually abrogated by the Law Court in *Davies v. City of Bath*, 364 A.2d 1269 (Me. 1976).

The Maine Tort Claims Act was enacted by the Legislature in 1977 as a comprehensive way in dealing with governmental exposure to tort claims. Since then, exceptions to immunity have been narrowed to the point where governmental units now enjoy a level of protection almost as comprehensive as it had prior to *Davies*.

## IV. DECISION

For the reasons stated herein, the defendant's Motion to Dismiss is granted.

The clerk will incorporate this Decision and Order into the docket by reference.

So Ordered.

DATED: November 1, 2002

Thomas E. Delahanty II
Justice, Superior Court

---

[4] In several cases over more than a decade, the Law Court stated that the issue of sovereign immunity was for the Legislature. *See, e.g., Nelson v. Maine Turnpike Auth.*, 157 Me. 174, 186, 170 A.2d 687, 693 (1961) ("We agree that sovereign immunity from tort liability has served it usefulness and ought to be destroyed."); *Bale v. Ryder*, 286 A.2d 344, 345 (Me. 1972) (citing to *Jivelekas v. City of Worland*, 546 P.2d 419 (Wyo. 1976) "Application of the so-called doctrine has been incorrect and its application cannot stand the test of logic." Also, the Legislature has the "capacity and administrative machinery" to deal with issues that impact on the public treasury.); *Bartashevich v. City of Portland*, 308 A.2d 551 (Me. 1973) (Legislature should be given time to act.); and *Shapiro Bros. Shoe Co., Inc. v. Lewiston-Auburn S.P.A.*, 320 A.2d 247, 257 (Me 1974) (It is not the court's duty to judge the wisdom of legislative enactments.).

RANDY PARENTEAU PR - PLAINTIFF

Attorney for: RANDY PARENTEAU PR
SHELDON J TEPLER
HARDY WOLF & DOWNING
186 LISBON ST
PO BOX 3065
LEWISTON ME 04243-3065

Attorney for: RANDY PARENTEAU PR
MICHAEL WELCH
HARDY WOLF & DOWNING
186 LISBON ST
PO BOX 3065
LEWISTON ME 04243-3065

ESTATE OF LEANNE CAISSIE - PLAINTIFF

Attorney for: ESTATE OF LEANNE CAISSIE
SHELDON J TEPLER
HARDY WOLF & DOWNING
186 LISBON ST
PO BOX 3065
LEWISTON ME 04243-3065

Attorney for: ESTATE OF LEANNE CAISSIE
MICHAEL WELCH
HARDY WOLF & DOWNING
186 LISBON ST
PO BOX 3065
LEWISTON ME 04243-3065


vs
YORK COUNTY - DEFENDANT

Attorney for: YORK COUNTY
JOHN WALL
MONAGHAN LEAHY LLP
95 EXCHANGE ST
PO BOX 7046
PORTLAND ME 04112-7046

SUPERIOR COURT
ANDROSCOGGIN, ss.
Docket No   AUBSC-CV-2002-00134

**DOCKET RECORD**

Filing Document: COMPLAINT                          Minor Case Type: OTHER NEGLIGENCE
Filing Date: 08/08/2002

## Docket Events:

08/08/2002 FILING DOCUMENT - COMPLAINT FILED ON 08/08/2002

08/08/2002 Party(s):   RANDY PARENTEAU PR
            ATTORNEY - RETAINED ENTERED ON 08/08/2002
            Plaintiff's Attorney: SHELDON J TEPLER

            Party(s):   ESTATE OF LEANNE CAISSIE
            ATTORNEY - RETAINED ENTERED ON 08/08/2002